J-S26001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DELLNORA PIPPEN, | |
| Appellant | No. 1445 EDA 2015 |

Appeal from the Judgment of Sentence of April 29, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012049-2014

BEFORE:  OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 04, 2016**

Appellant, Dellnora Pippen, appeals from the judgment of sentence entered on April 29, 2015.  We affirm.

The following evidence was presented during Appellant's bench trial.

On October 7, 2014, the Philadelphia Police were investigating a house located at 823 East Woodlawn Street, in Philadelphia for possible drug crimes; amongst the officers present that day were Officers Nathan London and Pellum Coaxum.  As Officer Coaxum testified, at approximately 3:50 p.m. that day:

> myself and my partner . . . met with a confidential informant [(hereinafter "CI")].  I searched the [CI] for [United States] currency and contraband before and after being sent to the location, 823 East Woodlawn, with negative results.  I supplied that [CI] with [$20.00] pre-recorded buy money and directed that [CI] to [the house at 823 East Woodlawn Street].

*Retired Senior Judge assigned to the Superior Court.

N.T. Trial, 4/29/15, at 9 and 20.

Officer London testified that, from his vantage point, he observed Appellant sitting on the porch of 823 East Woodlawn Street. As Officer London testified, he witnessed "the [CI] and [Appellant] engage[] in a brief conversation, at which time they both proceeded inside 823 East Woodlawn Street." *Id.* at 9. According to Officer London, the CI was inside the residence for "approximately two to three minutes," after which time the CI "exit[ed] the location and [] return[ed] back to Officer Coaxum." *Id.* at 9-10. The CI then "turned over [to Officer Coaxum] two green-tinted packets, each containing an off-white chunky substance," which later tested positive for cocaine. *Id.* at 20 and Commonwealth's Exhibit 1.

As Officer Coaxum testified:

> on that same day [between] the time of 4:00 and 5:00 p.m., I met with that same [CI] who I searched again for [United States] currency and contraband with negative results. I supplied that [CI] with [$20.00] pre-recorded buy money and directed that [CI] back to 823 East Woodlawn Street.

*Id.* at 20-21.

Officer London testified that he witnessed the CI approach Appellant, who was again sitting on the porch of 823 East Woodlawn Street. *Id.* at 10. According to Officer London:

> [the CI] approached . . . and once again engaged in a conversation with [Appellant]. [Appellant,] on both occasions, was wearing a black leather jacket and blue jeans.

- 2 -

> After a brief conversation, they both proceeded inside the location. The [CI] exited. [Appellant] also returned back to the porch area where she was sitting and the CI returned back to Officer Coaxum.

*Id.* at 11.

Once again, the CI "turn[ed] over two green-tinted packets [to Officer Coaxum], [which were] identical in shape, size[,] and content [to] the previous" packets. *Id.* at 21. The substance in the packets also tested positive for cocaine. Commonwealth's Exhibit 1.

The police obtained a search warrant for 823 East Woodlawn Street and they executed the warrant on October 8, 2014. *Id.* at 10-11. Moreover, as Officer London testified, "right before the warrant was served . . . a black male [] arrived at the location." *Id.* at 11. The male was later identified as Jimmy Bryant and a search of Mr. Bryant's person revealed that he possessed $804.00. *Id.* at 11-12. The police did not arrest Mr. Bryant. Appellant's Brief at 7.

Officer London testified that, when the police executed the warrant, they saw Appellant "in the living room area . . . wearing the same [] clothing that she was wearing on the previous day, black leather jacket and blue jeans." *Id.* at 11. As Officer London testified, after arresting Appellant:

> I observed Officer Barber recover from the kitchen inside a kitchen drawer, two green, six blue and one clear packet, each containing an off-white chunky substance, alleged crack cocaine.
>
> I [also] observed Officer Francis recover from the kitchen area, on top of the cabinets, there was a plate. On that plate was found to contain one blue and four clear packets

- 3 -

> containing a weedy-seed substance, alleged marijuana, along with one clear baggie containing a bulk amount of a weedy-seed substance, alleged marijuana.
>
> . . .
>
> Officer Barber also recovered from a jacket in the basement . . . a total of $400[.00] United States currency. I observed Officer McClain recover from the basement area one digital scale, one clear baggie containing numerous green, new and unused packets, alleged drug paraphernalia. I conducted NIK Test-G on the items that were purchased. They tested positive for cocaine base. Also, NIK Test-E on items that were confiscated and they tested positive for marijuana. . . .

*Id.* at 11-12.

Officer London testified that Appellant did not own the house at 823 East Woodlawn Street – rather, Appellant "said it was her mother's house." *Id.* at 16. Officer London also testified that Appellant did not have keys to the house and "there was no proof of residence for [Appellant] in that house." *Id.* at 15 and 16. However, Officer London testified that Appellant was able to freely enter and exit 823 East Woodlawn Street on October 7, 2014, and that she was present in the house on October 8, 2014. *Id.* at 17.

As to the interaction between Appellant and the CI on October 7, 2014, Officer London testified that he: "never heard any conversation between [Appellant] and the CI;" "never saw any money or objects exchanged between [Appellant] and the CI;" did not go inside of 823 East Woodlawn Street on October 7, 2014; and, had "no idea who was inside that house on October 7[, 2014]." *Id.* at 14-15. Nevertheless, Officer London testified that, on October 7, 2014, he did not "observe anybody else interact

with the CI other than [Appellant]" and that he did not "observe anybody inside of the house coming in and out of the house other than [Appellant]." *Id.* at 13.

Finally, with respect to the events of October 8, 2014 (when the police executed the warrant), Officer London testified that: all of the narcotics were found in the kitchen; "[n]one of the narcotics were in plain view;" Appellant "did not run or resist arrest in any way;" no money, drugs, or paraphernalia was found on Appellant's person; he never saw Appellant in the basement of the house; he had "no idea" whether any of the clothes found in the basement belonged to Appellant; and, the police never recovered the pre-recorded buy money that was used to purchase the narcotics. *Id.* at 15-16 and 18.

The CI did not testify at Appellant's trial.

The trial court found Appellant guilty of possession of a controlled substance with the intent to deliver (hereinafter "PWID") and possession of a controlled substance.[1] On April 29, 2015, the trial court sentenced Appellant to serve 42 months on probation for PWID. Appellant filed a timely notice of appeal and now claims:

> Was not the evidence insufficient to convict [A]ppellant beyond a reasonable doubt of [PWID] and possession of a controlled substance where the evidence established only that [A]ppellant and a police informant conversed after

---

[1] 35 P.S. § 780-113(a)(30) and (16), respectively.

> which both entered a house for a brief time, and after the [CI] left the house, the [CI] turned over drugs to police?

Appellant's Brief at 3.

We review Appellant's sufficiency of the evidence challenges under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brown***, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*), *quoting* ***Commonwealth v. Hutchinson***, 947 A.2d 800, 805-806 (Pa. Super. 2008).

As our Supreme Court has explained:

> The offense of delivery of a controlled substance is provided for in section 780-113(a)(30) of [t]he Controlled Substance, Drug, Device and Cosmetic Act, (the "Act"). According to

that section, the offense occurs in the following circumstances:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). The term delivery, as used in this section, is defined by the Act as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780-102. Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so.

A defendant actually transfers drugs whenever he physically conveys drugs to another person. Similarly, . . . a defendant constructively transfers drugs when he directs another person to convey drugs under his control to a third person or entity.

It is well-established, however, that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor. *See* 18 Pa.C.S.A. § 306; *see also* ***Commonwealth v. Bradley***, 392 A.2d 688, 690 (Pa. 1978) (the actor and his accomplice share equal responsibility for commission of a criminal act). A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agree[d] or attempt [ed] to aid such other person in planning or committing it." 18 Pa.C.S.A. § 306; ***Commonwealth v. Spotz***, 716 A.2d 580, 585 (Pa. 1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." First, there must be

- 7 -

evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1233-1234 (Pa. 2004) (internal footnotes omitted) (some internal citations omitted).

According to Appellant, the evidence was insufficient to support her convictions because her convictions were based upon impermissible speculation and conjecture. Appellant writes:

> The circumstantial evidence of guilt presented by the Commonwealth in [Appellant's] case consisted of only three facts. First, police observed the [CI] approach [Appellant]. Second, [Appellant] and the [CI] went into the house. Third, the [CI] left and later turned over drugs to police purportedly bought with pre-recorded buy money. This circumstantial evidence is insufficient on its face. The police did not hear any conversation between the two parties. The police, who observed the house no more than one hour and [15] minutes[] during the span of a day[] had no idea who else was inside the property. In fact, a male with a total of $804.00 was at the property when police executed the search warrant. Lastly, the pre-recorded buy money was never recovered.
>
> . . .
>
> To deliver illegal drugs, one first must be in possession of them. There is no evidence that [Appellant] was ever in

- 8 -

possession of controlled substances. She was not in personal possession of controlled substances when arrested. The drugs found in the house were secreted in the kitchen of her mother's house. There was no evidence that [Appellant] resided at the property. . . . To sustain [Appellant's] conviction[s] on such conjecture and speculation would be improper.

Appellant's Brief at 12-13.

We disagree with Appellant and conclude that, in this case, the evidence is not "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Brown**, 23 A.3d at 559-560. As the trial court explained:

Here, the evidence established that police officers observed [Appellant], on two separate occasions, meet with a [CI], engage in a brief conversation on the porch of 823 East Woodlawn Street, walk into the house, and [either remain inside of the house or] shortly thereafter return with the [CI] outside to the porch. On both of these occasions, the [CI] was searched for [United States] currency and contraband with negative results prior to going [inside] the house. On both of these occasions[,] the [CI] returned from the house to Officer Coaxum with two [] green-tinted packets each containing crack cocaine.

When the search warrant was executed at 823 East Woodlawn Street, [Appellant] was found sitting in the living room with the same black leather jacket and blue jeans she had on from the day before when the [CI] had been to the house. Right before the warrant was executed, Jimmy Bryant arrived at the house with a total of [$804.00] on his person. He was never observed at any other time during the officers' surveillance. As a result of the search of the house, officers recovered two [] green, six [] blue[,] and one [] clear packet, each containing crack cocaine, one [] blue and four [] clear packets containing marijuana, and one [] clear baggie containing a bulk amount of marijuana. Also recovered from the house was a jacket with [$400.00]

> in it, one [] digital scale, [and] one [] clear baggie containing numerous green, new and unused packets.

Trial Court Opinion, 8/3/15, at 9 (internal citations and emphasis omitted).

After viewing the above evidence in the light most favorable to the Commonwealth – and giving the Commonwealth every reasonable inference from the above evidence – we conclude that the evidence is sufficient to prove that Appellant either directly sold the cocaine to the CI or, at a minimum, served as an accomplice who intentionally promoted the sale of cocaine to the CI by aiding an unknown individual in the house.

Certainly, the evidence demonstrates that, on October 7, 2014, the CI twice arrived at 823 East Woodlawn Street with the express intent of purchasing narcotics. After speaking with Appellant on the porch both times, Appellant twice chaperoned the CI into the house and, "approximately two to three minutes" later, the CI emerged from the house with cocaine that the CI did not possess prior to entering the house. Moreover, during the second controlled purchase, Appellant not only chaperoned the CI **into** the house to purchase narcotics, but Appellant also chaperoned the CI **out** of the house following the cocaine purchase. Given our standard of review – and given the substantial evidence of narcotics distribution found in the house on the very next day – it strains the imagination to accept Appellant's argument that she was not the one who either sold the cocaine to the CI or aided a hidden individual in the house to sell the cocaine, "with the intent of promoting or facilitating the" sale of cocaine. ***See Murphy***, 844 A.2d at 1233.

In reaching this assessment of the facts, we note under our standard of review that the Commonwealth owes no obligation to dispel **every** possibility of innocence. Instead, the Commonwealth meets its burden of proof where it overcomes reasonable doubt as to the establishment of each element of an offense through the introduction of either direct or circumstantial evidence. Appellant in this case simply asks this Court to be willfully blind to her role as either the seller of the cocaine or as the doorman to the dopehouse. We will not do so.

The evidence in this case was thus sufficient to establish that Appellant committed the offense of PWID, and the lesser-included offense of simple possession of a controlled substance. Appellant's claim to the contrary fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2016