J-S57044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CRAIG BROWN, | : | |
| | : | |
| Appellant | : | No. 1176 EDA 2016 |

Appeal from the Judgment of Sentence February 12, 2014
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s):  CP-23-CR-0004144-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CRAIG BROWN, | : | |
| | : | |
| Appellant | : | No. 1181 EDA 2016 |

Appeal from the Judgment of Sentence February 12, 2014
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s):  CP-23-CR-0004178-2013

BEFORE:  PANELLA, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 16, 2017**

Craig Brown ("Brown") appeals from the judgment of sentence imposed following his convictions of two counts of delivery of a controlled substance.  **See** 35 P.S. § 780-113(a)(30).[1]  We affirm.

---

[1] Brown was charged on three separate dockets, which were consolidated for trial.  Brown was convicted of one count of delivery of a controlled substance at each of the above-mentioned dockets.  Brown was found not guilty of the charges at No. CP-23-CR-0004149-2013.

On March 26, 2013, Chester City Police Officer Calvin Butcher ("Officer Butcher"), a member of the Narcotics Division, was conducting surveillance in the 900 block of West 3rd Street. Officer Butcher observed Brown at Roland Walston's ("Walston") residence, located at 921 West 3rd Street. Officer Butcher observed Brown and Walston enter and exit the residence several times throughout the day, stand in front of the residence together, and walk across the street to the convenience store together.

At approximately 3:00 p.m., Officer Butcher observed a blue vehicle, occupied by a female driver, pull up in front of the residence. At that time, Walston exited the residence, walked to the vehicle and opened the passenger side door, and had a brief conversation with the driver. Walston then returned to the residence, where he stayed for one to two minutes before returning to the vehicle. Officer Butcher observed Walston hand the driver a "red tint dark object" in exchange for cash. The driver placed the item in her bra and drove away. Walston then walked directly to Brown and handed him the cash.

Officer Butcher notified assisting units that a drug transaction had taken place, described the vehicle, and provided the woman's direction of travel. Officer German Sabillon ("Officer Sabillon") stopped the blue vehicle. The driver admitted that she had drugs in her bra, and handed Officer Sabillon the red-tinted plastic bag, which contained a white, powdery

substance. Officer Sabillon identified the substance as cocaine based on a field test, and the subsequent laboratory report confirmed the result.

At approximately 3:45 p.m., Officer Butcher observed an individual on a bicycle approach Walston in front of the residence. After a brief conversation, the bicyclist handed Walston cash. Walston then walked directly to Brown, handed the cash to Brown, and returned to the residence. About a minute or two later, Officer Butcher observed Walston exit the residence, and hand the bicyclist several red-tinted plastic bags. The bicyclist left with the bags in his left hand.

Officer Butcher notified the assisting units that a second drug transaction had taken place. Officer Sabillon stopped the bicyclist, who attempted to enter a residence as Officer Sabillon approached. When the bicyclist opened the door, Officer Sabillon saw the bicyclist retrieve the bags and toss them inside the house, near a television stand. Officer Sabillon told the assisting officer where the bicyclist had thrown the bags, and the assisting officer retrieved two red-tinted plastic bags containing a white substance. Based on a field test, Officer Sabillon identified the substance as cocaine, and a subsequent laboratory report confirmed the result.

Based on the investigation, Officer Sabillon obtained a search warrant for the residence at 921 West 3rd Street. Several officers executed the search warrant on March 27, 2013, at which time Brown was arrested.

Following a bench trial, Brown was convicted of the above-mentioned crimes. The trial court sentenced Brown to an aggregate term of one to five years in prison.

On April 21, 2014, Brown, *pro se*, filed a Petition pursuant to the Post Conviction Relief Act ("PCRA"),[2] asserting that his trial counsel was ineffective for failing to file post-sentence motions and a direct appeal on his behalf, despite Brown's requests. The PCRA court appointed Brown counsel, who filed an Amended Petition and an Application to Withdraw as counsel. In its Answer, the Commonwealth agreed that Brown had timely requested his trial counsel to file a direct appeal on his behalf, but disputed Brown's right to reinstatement of his right to file post-sentence motions. By Order dated March 29, 2016, the PCRA court granted Brown leave to file, *nunc pro tunc*, post-sentence motions and a notice of appeal from his judgment of sentence, and denied, without prejudice, PCRA counsel's Application to Withdraw as counsel.

Brown, through counsel, filed a post-sentence Motion, which the trial court denied. Brown filed separate Notices of Appeal[3] and court-ordered Pa.R.A.P. 1925(b) Concise Statements of errors complained of on appeal

---

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

[3] After filing the Notices of Appeal, Brown's appointed PCRA counsel filed an Application for Appointment of Direct Appeal Counsel and Withdrawal of Appearance. By Order dated April 27, 2016, the trial court allowed PCRA counsel to withdraw, and appointed Brown counsel for his direct appeal.

under each docket number. This Court, *sua sponte*, consolidated Brown's appeals.

On appeal, Brown raises the following issue for our review: "Was the evidence sufficient to support the convictions?" Brief for Appellant at 5.

"Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner." ***Commonwealth v. Evans***, 901 A.2d 528, 532 (Pa. Super. 2006) (citation omitted).

> In applying the above test, we may not weigh the evidence and substitute our prior judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Furness***, 153 A.3d 397, 401 (Pa. Super. 2016) (citation and brackets omitted).

Brown argues that he cannot be held liable as an accomplice because he did not enter the residence from which the drugs were retrieved during the sales; he had no contact with the buyer; and he did not touch the drugs.

Brief for Appellant at 18-19. Brown also claims that he was across the street when the drug sales took place, and therefore, "his ability to even know what was occurring was suspect." *Id.* at 18. Additionally, Brown asserts that the fact that Walston gave Brown the money *after* the drug sales were completed is insufficient to establish that Brown aided in the transaction. *Id.* at 18-19.

The Controlled Substance, Drug, Device and Cosmetic Act ("the Act") prohibits "the manufacture, delivery, or possession with intent to deliver, a controlled substance by a person not registered under this [A]ct…." 35 P.S. § 780-113(a)(30). The Act defines "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." *Id.* § 780-102 (emphasis added). "Thus, for a defendant to be liable as a principal for the delivery of a controlled substance[,] there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004).

> It is well-established, however, that a defendant, who is not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor. *See* 18 Pa.C.S.[A.] § 306; *see also Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688, 690 (1978) (the actor and his accomplice share equal responsibility for commission of a criminal act). A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of

the offense, he: (i) solicit[ed the principal] to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S.[A.] § 306[.] Accordingly, two prongs must be satisfied for a defendant to be found guilty as an accomplice. First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***Murphy***, 844 A.2d at 1234 (some citations omitted); ***see also***

***Commonwealth v. Mitchell***, 135 A.3d 1097, 1102 (Pa. Super. 2016)

(stating that "[a]ccomplice liability may be established wholly by

circumstantial evidence. … No agreement is required, only aid." (citation

omitted)).

Here, the trial court considered Brown's claim and concluded that the

evidence presented at trial was sufficient to support his conviction of

delivery of a controlled substance as an accomplice because Brown and

Walston were long-time friends; Brown "could enter and exit [] Walston's

home … unfettered[;]" Brown and Walston spent the afternoon of March 26,

2013 together; Brown was in "close, watchful proximity" to Walston while

Walston sold cocaine to the female driver and the bicyclist; and Brown was

the "immediate financial beneficiary of [] Walston's illegal activities." ***See***

Trial Court Opinion, 10/26/16, at 22-24. The trial court additionally reasoned that Brown and Walston "aided each other in the facilitation of their drug dealing operation" by keeping the cocaine separate from the proceeds of its sale. *See id.* at 24.

At trial, Officer Butcher testified that he was conducting surveillance in the 900 block of West 3rd Street on March 26, 2013. *See* N.T., 11/13/13, at 30. Officer Butcher observed Brown enter and exit the residence several times throughout the day. *See id.* at 33. Officer Butcher also observed Brown and Walston together throughout the afternoon—exiting the residence, standing in front of the residence, and walking across the street to the convenience store. *See id.* at 108.

Officer Butcher testified that, at approximately 3:00 p.m., a blue vehicle, occupied by a female driver, pulled up in front of the residence. *See id.* at 35. Officer Butcher stated that Walston exited the residence and walked to the car, opened the passenger side door, and had a brief conversation with the driver. *See id.* at 36. According to Officer Butcher, Walston then returned to the residence, where he remained for one to two minutes. *See id.* at 40. Officer Butcher testified that Walston handed the driver a "red tint dark object in exchange for green paper money." *Id.* at 40-41; *see also id.* at 100. Additionally, Officer Butcher testified that as soon as the driver pulled away, Walston walked directly to Brown and handed Brown the cash he had just received from the driver. *See id.* at 42.

Officer Butcher stated that, at approximately 3:45 p.m., an individual on a bicycle approached Walston in front of the residence. *See id.* at 47-48, 102. According to Officer Butcher, the bicyclist engaged Walston in a brief conversation and then handed Walston cash. *See id.* at 47-48, 102. Officer Butcher testified that Walston handed the cash to Brown before returning to the residence. *See id.* at 48, 102-03. Officer Butcher stated that Walston remained in the residence for one to two minutes, then returned to the bicyclist and handed him several red-tinted plastic bags. *See id.* at 48, 102-03.

Additionally, Walston indicated during trial that he had kept the drugs in his residence. *See* N.T., 11/13/13, at 155 (wherein Walston testified that when he first met the bicyclist on the street, he "didn't bring out exactly what he wanted" and had to return to the house "to get the other piece"); *see also id.* at 166 (wherein Walston stated that the bicyclist paid for two packets of drugs, but he had only brought one, so he had to return to the house).

Upon review, we conclude that it was reasonable for the trial court to infer that Brown intentionally aided Walston in the sale of cocaine. Brown was in close proximity to Walston while Walston conducted the drug sales, and Brown immediately received and secured the proceeds of the sales. Additionally, Brown and Walston were together throughout the afternoon, and Brown entered and exited the residence, where the drugs were kept,

several times throughout the day. **See Commonwealth v. Toritto**, 67 A.3d 29, 35 (Pa. Super. 2013) (*en banc*) (concluding that evidence was sufficient to sustain conviction delivery of a controlled substance under an accomplice theory, where appellant drove the seller to a bar to meet with the buyer and was intermittently present during the seller's discussions with the buyer, even though appellant did not participate directly in the transaction); **see also Commonwealth v. McCall**, 911 A.2d 992, 997 (Pa. Super. 2006) (concluding that there was sufficient evidence to sustain conviction of conspiracy to deliver a controlled substance where, "[e]ven though [a]ppellant did not physically handle the drugs transacted," there was evidence that appellant "took an active role in the illicit enterprise," *i.e.*, appellant immediately received money from two sales, and served as a lookout during the transactions). Further, because Brown received the financial benefit of the sales, and therefore had an active interest in the sales, we cannot agree with Brown's contention that he was merely present in the area at the time Walston sold cocaine. **See Murphy**, 844 A.2d at 1234. **But see Commonwealth v. Flowers**, 387 A.2d 1268, 1271 (Pa. 1978) (concluding that there was insufficient evidence to sustain conviction as an accessory to the sale of marijuana, where defendant was "present only passively" during the negotiations and transfer and did not handle either cash or marijuana, and there was no evidence that the defendant had any interest in, or benefited from, the sale). Thus, the evidence presented at

trial, and the reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict-winner, was sufficient to sustain Brown's convictions.  **See Evans, supra**; **see also Mitchell, supra**.

Accordingly, we affirm Brown's judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *11/16/2017*