J-A28009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSH E. STEWART | : | |
| | : | |
| Appellant | : | No. 32 EDA 2015 |

Appeal from the Judgment of Sentence June 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010738-2013

BEFORE:  GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:　　　　　**FILED DECEMBER 22, 2017**

Appellant, Josh E. Stewart, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for possession with intent to deliver a controlled substance ("PWID") and criminal conspiracy.[1]  We affirm.

In its opinion filed July 21, 2016, the trial court accurately set forth the relevant facts of this case as follows:

> FACTUAL HISTORY
>
> At trial, the Commonwealth of Pennsylvania established that between the dates of July 16[th] through July 19, 2013, City of Philadelphia Police Officers McClain, Coaxum, Floyd, and Cuffie conducted an investigation involving the sale of narcotics in Southwest Philadelphia.  Specifically, the object

_____

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 903, respectively.

of their attention was a house located at 5832 Webster Street in the city and county of Philadelphia.

Officer McClain testified at trial that on the first day of the investigation, July 16, 2013, he and his partner, Officer Coaxum, met a designated confidential informant (hereinafter referred to as "C.I."). Officer McClain personally and methodically checked the C.I. for narcotics and money in preparation before sending the C.I. on a supervised mission to purchase illegal narcotics from a suspected drug dealer. This method of preparation involved searching the informant's pockets and garments, to insure that the supervised purchase would not [be] impaired by any other funding sources or narcotics.

Once Officer McClain was satisfied that the C.I. possessed zero narcotics or money, the C.I. was provided a sum of "pre-recorded buy money." Officer McClain then directed the C.I. to attempt to purchase illegal narcotics at or near the targeted location of 5832 Webster Street in Southwest Philadelphia. Officer McClain observed the C.I. walk from the Officer's unmarked surveillance vehicle and down the residential 5800 block of Webster Street toward the suspected residence of 5832 Webster Street. Officer McClain waited at a nearby surveillance location until the C.I. returned after a few short moments.

Upon the C.I.'s return, Officer McClain searched the informant again to insure no additional money or narcotics were possessed. The C.I. possessed no money and provided Officer McClain with two clear packets of crack cocaine narcotics that were purchased with the pre-recorded buy money. Additionally, the CI provided the Officer with a phone number…to arrange future purchasing of narcotics.

Later, on the same day as the first purchase, telephone arrangements were made to purchase cocaine utilizing the same telephone number earlier provided to the C.I. The same C.I. then purchased two clear packets of cocaine in a similar manner as described in the first sale. Officers observed the alleged seller of the second set of packets of cocaine to be an unknown male who left the area.

On July 18, 2013[,] the Officers returned to the area of 5832

Webster Street with the same C.I. they used on July 16, 2013, and again directed the C.I. to purchase cocaine, implementing the same telephone communication procedures and surveillance methods used on July 16, 2013. On this date, the C.I. purchased two clear packets of cocaine in exchange for $20.00 pre-recorded buy money from another unknown male from 5832 Webster Street.

Following the drug transactions on July 16, 2013 and July 18, 2013, officers obtained a legally issued Search and Seizure Warrant for the address 5832 Webster Street. Prior to execution of the warrant, the same C.I. that had been utilized on the earlier dates, was sent directly to 5832 Webster Street to purchase narcotics with $40.00 pre-recorded buy money after being thoroughly searched and directed in the same manner as before.

Officers credibly testified on July 19, 2013, they observed [Appellant] walk down the sidewalk of the 5800 block of Webster Street from an unknown location and readily greet the C.I. After the C.I. and [Appellant] briefly spoke to each other, [Appellant] went inside 5832 Webster Street, while initially leaving the C.I. on the porch of this row home residence. [Appellant] then allowed the C.I. entry into 5832 Webster Street. When the C.I. directly returned to the surveillance position, the C.I. was again searched for money or drugs. The C.I. provided the officers with four clear packets of crack cocaine [which] appeared to be consistent in weight [with] the packets previously purchased.

Upon search of 5832 Webster Street, Officers recovered mail addressed to [Appellant], [Appellant's] Pennsylvania Non-Driver's Photographic Identification Card, as well as the pre-recorded buy money used in the purchase just moments before the execution of the Warrant. Officers also recovered house keys, $390.00, and numerous new and unused green and pink zip-lock packets similar to the packets encasing the previously purchased cocaine, and a cellular phone with a number different than the number used to arrange transactions.

Although there were some conflicts in the officers' trial testimony as to the exact location of some of the items recovered within 5832 Webster Street, these memory

> differences were relatively minor and the jury reasonably resolved them in the favor of the Commonwealth's version of events.

(Trial Court Opinion, filed July 21, 2016, at 4-6).

Procedurally, the jury convicted Appellant on April 11, 2014, of one count each of PWID and conspiracy to commit PWID. On June 12, 2014, the court sentenced Appellant to an aggregate term of four (4) to ten (10) years' imprisonment, plus six (6) years' probation. Appellant timely filed a post-sentence motion on June 20, 2014, which the court denied on June 24, 2014. On July 1, 2014, Appellant timely filed a notice of appeal. On October 6, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant subsequently requested an extension of time to file his concise statement, until after receipt of the notes of testimony. The court granted Appellant's request. On January 11, 2016, the trial court issued a Rule 1925(a) opinion, explaining Appellant still had not filed a Rule 1925(b) statement even though the notes of testimony had been transcribed, and suggested waiving Appellant's appellate issues on this ground.[2]

On January 14, 2016, Appellant filed an application for relief in this Court

---

[2] Pursuant to Pa.R.A.P. 1925(c)(3), outright waiver of Appellant's issues would have been inappropriate. **See** Pa.R.A.P. 1925(c)(3) (stating if appellant in criminal case was ordered to file concise statement and failed to do so, such that appellate court is convinced that counsel has been *per se* ineffective, appellate court shall remand for filing of concise statement *nunc pro tunc* and for preparation and filing of opinion by trial court).

seeking a remand to file a Rule 1925(b) statement, claiming a scrivener's error had prevented Appellant's receipt of the notes of testimony. In anticipation of this Court's grant of his request, Appellant filed a Rule 1925(b) statement in the trial court on that date. This Court granted Appellant's request by *per curiam* order, on February 2, 2016. Appellant subsequently obtained new counsel, who filed another application for remand in this Court, seeking to file a supplemental Rule 1925(b) statement raising new appellate issues. This Court granted that request on November 10, 2016. On November 29, 2016, Appellant filed a supplemental Rule 1925(b) statement. The trial court then filed a supplemental opinion on April 3, 2017.

Appellant raises four issues for our review:[3]

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING THE JURY'S REQUEST DURING DELIBERATIONS FOR A READ BACK OF A BRIEF PORTION OF THE TESTIMONY OF TWO POLICE WITNESSES, AND BASED THAT ERRONEOUS RULING ON A MISINTERPRETATION OF THE JURY NOTE?
>
> WHETHER [APPELLANT] WAS ENTITLED TO AN ADVERSE INFERENCE INSTRUCTION WHERE THE POLICE DID NOT PRESERVE THE MOST INCRIMINATING EVIDENCE THEY ALLEGED, RECOVERED DRUG BUY MONEY?
>
> WERE NOT THE TRIAL COURT'S INSTRUCTIONS THAT [APPELLANT] CAN BE LIABLE FOR CRIMES COMMITTED BY ANOTHER BY VIRTUE OF BEING A CO-CONSPIRATOR INCONSISTENT WITH THE SUPREME COURT'S DECISION IN **COMMONWEALTH V. KNOX**, [629 PA. 467,] 105 A.3D 1194 [(2014)], AND THE GOVERNING STATUTE, 18 PA.C.S.

---

[3] For purposes of disposition, we have re-ordered Appellant's issues.

§ 306, WHICH PROVIDES FOR ACCOMPLICE LIABILITY
ONLY?

DO NOT STATE LAW AND DUE PROCESS OF LAW REQUIRE
THE GRANT OF A NEW TRIAL ON THE BASIS OF INDIVIDUAL
AND CUMULATIVE ERROR?

(Appellant's Brief at 9).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Anne Marie B. Coyle, we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Supplemental Trial Court Opinion, filed April 3, 2017, at 3-11) (finding: **(1)** during deliberations, jury submitted request to have testimony of Officers Cuffie and Coaxum read back; jury said it specifically wanted to hear officers' testimony related to recovery of Appellant's photo identification card; parties agreed it would be improper for court to read entirety of each officer's testimony; defense counsel requested that court stenographer read back to jury parceled portions gleaned from direct and cross examination of both witnesses concerning their recovery of items including photographic identification; court declined defense counsel's request because reading back discrete portions of direct and cross examination of both witnesses would be out of context, create further confusion, and invite undue inquiry; court employed its discretion by declining to read back officers' testimony and instead, directing jurors to utilize their collective recollection; to permit selective reading of testimony would place undue emphasis on those

- 6 -

portions of testimony; additionally, given brevity of trial, where officers testified one day before deliberations, read back of testimony was not warranted;[4] **(2)** regarding pre-recorded buy money police recovered from Appellant, it would have been unreasonable for court to issue adverse inference instruction simply because police did not physically retain original U.S. currency used in investigation from date of Appellant's arrest to date of trial; there is obvious, practical need for City of Philadelphia police department to recirculate its limited supply of U.S. currency to facilitate future criminal investigations; moreover, officers photocopied unique serial numbers of each bill before narcotics purchase and after Appellant's arrest; Commonwealth provided defense photocopies of these bills, with corresponding serial numbers, well in advance of trial; thus, Commonwealth sufficiently preserved pre-recorded buy money for evidentiary purposes;[5] **(3)** Appellant did not

_____

[4] ***See Commonwealth v. Small***, 559 Pa. 423, 741 A.2d 666 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 80 (2000) (explaining it is within trial court's discretion to grant or deny jury's request for read back of trial testimony; holding trial court properly exercised its discretion by denying jury's request for read back, and instead instructing jury to use its "collective recollection," where read back would have posed risk that jury would unduly highlight that testimony).

[5] Appellant contends that the photocopy of the money used in the controlled buy on July 19, 2013, is not an accurate reproduction of the pre-recorded buy money actually used on that date. Specifically, Appellant claims a cover sheet attached to the photocopy states in the subject line: "PRE-RECORDED BUY MONEY FOR FRIDAY JULY 18, 2013." (Appellant's Reply Brief at 3). At trial, Officer McClain testified that the cover sheet contains a "general" section, which is automatically generated by the computer program, and a "subject"

object to jury instructions on accomplice or co-conspirator liability, so claim is waived;[6] moreover, Commonwealth presented evidence that Appellant, at least once, actively or constructively sold illegal narcotics to C.I. from residence at issue; additional physical evidence obtained from search of residence showed Appellant's joint dominion and control over property where he had sold illegal narcotics and that Appellant had been acting in concert with others who had actively sold same type of illegal narcotics in same manner as

_____

section, which is completed by the user. The "general" section accurately contains the date "7/19/13." Officer McClain suggested that the officer who drafted the cover sheet inadvertently entered the wrong date in the "subject" section. (**See** N.T. Trial, April 8, 2014, at 58-59.) Additionally, July 18, 2013 was a Thursday, not a Friday, which supports Officer McClain's explanation. In any event, the jury heard testimony about the inconsistency and resolved it in favor of the Commonwealth.

[6] Appellant insists he is excused from waiver, claiming our Supreme Court announced a new rule of law in **Knox**, while his case was pending on direct appeal. In **Knox**, our Supreme Court interpreted Section 306 of the Crimes Code (governing accomplice liability) as rejecting the earlier and expansive "common-design" and "natural-and-probable consequences" doctrines. The Court explained that under Section 306, "status as an accomplice relative to some crimes within a larger criminal undertaking or episode no longer *per se* renders a defendant liable as an accomplice for all other crimes committed. Rather, closer, offense-specific analysis of intent and conduct is required." **Knox, supra** at 471, 105 A.3d at 1197 (internal citation omitted). The General Assembly enacted Section 306 of the Crimes Code on December 6, 1972, effective June 6, 1973. Thus, Appellant is not entitled to retroactive application of **Knox** or excused from waiver, because **Knox** did not announce a "new rule of law." **See Commonwealth v. Hughes**, 581 Pa. 274, 865 A.2d 761 (2004) (defining "new rulings" as those which break new ground or impose new obligation on states or federal governments, or, stated otherwise, where result was not dictated by precedent existing at time defendant's conviction became final).

Appellant from same location, close in time to Appellant's sale; court gave definitions of each element of PWID; jury could have decided Appellant acted as principal even without any understanding of Appellant's culpability as co-conspirator or accomplice; unlike defendant in **Knox**, Appellant was also charged with conspiracy to commit PWID; because trial evidence supported possible determination of Appellant's culpability for PWID as co-conspirator[7] or accomplice, court gave jury instructions for co-conspirator and accomplice liability; court distinguished between theories of liability and provided instructions almost verbatim from Suggested Standard Criminal Jury Instructions; **(4)**[8] court considered whether Appellant was entitled to new trial for individual or collective errors and decided no harmful, prejudicial, or reversible error had occurred).  Therefore, we affirm based on the trial court's Supplemental Rule 1925(a) opinion.

Judgment of sentence affirmed.

_____

[7] **See Commonwealth v. Golphin**, 161 A.3d 1009 (Pa.Super. 2017), *appeal denied*, ____ Pa. ____, 170 A.3d 1051 (2017) (explaining once trier of fact decides there was conspiratorial agreement and defendant intentionally entered into agreement, defendant may be liable for overt acts committed in furtherance of conspiracy regardless of which co-conspirator committed act).

[8] The Commonwealth claims Appellant's fourth issue is waived for failure to raise it in his concise statement.  Nevertheless, the record shows Appellant preserved this issue in his Supplemental Rule 1925(b) statement.  (**See** Supplemental Rule 1925(b) statement, filed November 29, 2016, at 3 ¶ 5(e)).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2017

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

**FILED**

APR 0 3 2017

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA )    PHILADELPHIA COUNTY
<small>CP-51-CR-0010738-2013 Comm. v. Stewart, Josh E.</small>        COURT OF COMMON PLEAS
<small>Opinion</small>

VS.

|||||| |||| ||| |||| |||| ||| ||| |||
7928184061

NO. CP-51-CR-0010738-2013

JOSH E. STEWART )

## OPINION IN RESPONSE TO SUPPLEMENTAL STATEMENT OF ERRORS MATTERS COMPLAINED OF ON APPEAL

Appellant, Josh E. Stewart, as the above-named Defendant, seeks review of the Orders and Judgments of Sentence, imposed on June 12, 2014, by the Honorable Anne Marie B. Coyle, Judge of the First Judicial District Court of Common Pleas. The Appellant asserted within the Defendant's reinstated Statement of Matters Complained Of On Appeal Pursuant to Pa. R. P. 1925(b) that there was insufficient evidence to support the jury verdicts of guilty, and that the prosecutor committed misconduct that requires the relief of a new trial during closing arguments. Appellant also contended the trial court imposed an impermissibly harsh and excessive aggregate sentence after failing to adequately examine petitioner's background, character, and rehabilitative needs. This trial court filed a detailed Opinion addressing the Defendant's previously filed appellate claims on July 21, 2016, which has been docketed by the Pennsylvania Superior Court under Number 32 EDA 2015.

On October 19, 2016, the Defendant, by and through his appellate counsel, filed a Petition with the Pennsylvania Superior Court requesting permission to file a Supplemental Statement of Errors Complained Of On Appeal. On November 10, 2016, the Pennsylvania Superior Court

1

entered a Per Curiam Order permitting the Appellant ability to file a Supplemental Statement pursuant to PARA.P. 1925 (b) and remanding the matter to the trial court. On November 28, 2016 the Defendant filed a Supplemental Statement of Errors Complained Of On Appeal. Within this Supplemental Statement, the Defendant claims that a new trial is warranted for the following individual or collective reasons:

1. "The prosecutor impermissibly vouched for the Commonwealth's case and its police officers within his closing remarks;

2. The trial court abused its discretion by refusing a jury request to have the stenographer read back certain portions of the testimony;

3. The trial court abused its discretion by failing to give a requested instruction that it could draw an adverse inference from the failure of the Commonwealth to preserve and produce the actual United States Currency used to purchase the narcotics at issue;

4. The trial court "instructed the jury that the defendant could be convicted of possession with intent to deliver, and the other substantive offense if the Commonwealth established that he was a member of a conspiracy and another member committed these substantive offenses in furtherance of the conspiracy. After the trial and sentencing in this case, the Pennsylvania Supreme Court changed prior law by holding in Commonwealth vs. Knox, 105 A.3d 1194(Pa. 2014), that liability for crimes committed by another person is to be determined solely by assessing whether an individual is an accomplice under 18 Pa.C.S. §306. There is no statutory support for the trial court's erroneous prejudicial instructions that a defendant may also be found guilty (even if not an accomplice) if a co-conspirator committed the offense in furtherance of the conspiracy. This instruction violated Pennsylvania law and due process rights."

## PROCEDURAL AND FACTUAL HISTORY

This Court incorporates as if set forth in full within this Supplemental Opinion, the recitation of the both the procedural and factual history and discussion recorded the original Opinion filed July 21, 2016.

## DISCUSSION

In his Supplemental Statement of Errors, the Defendant reasserts the claim made within the original Statement of Matters Complained of On Appeal, when he argues that the prosecutor

2

committed prejudicial misconduct during closing argument at trial, This Court addressed this similarly phrased assertion thoroughly in its previously filed Opinion, particularly beginning on page 17 and continuing through to page 19. No further comment shall be made in reference to this Supplemental Claim.

The Defendant alleges in his Supplemental Statement of Errors that, "the trial court abused its discretion by refusing a jury request to have a portion of the testimony of Officers Coaxum and Cuffie read back to it concerning the recovery of the defendant's photo identification during the search of 5832 Webster Street in Philadelphia. The transcribed trial record reflects that this request was communicated by the deliberating jury within the second or third of eight written combined sets of questions. This question concerned overlapping areas of inquiry provided by the two officers who testified in a live fashion approximately one day before the jury began deliberating.

The entire communication request from the jury recited as follows: "Your Honor, we would like to request to have the testimony of Officers Cuffey and Coaxum reread. We would specifically like to hear sections related to recovery of circumstantial evidence and photo ID. Additionally, we would like clarification and definitions of circumstantial evidence and reasonable doubt." When this compound communication was discussed between this Court and the attorneys for both parties out of the presence of the jury, counsel for the Defendant vacillated as to his equivocal recommendations. While agreeing with the Court that it would be improper to honor the jury's request to have the stenographer read aloud essentially the predominate portion of all trial testimony, counsel objected to the Court's intention to remind the jury that they should rely upon their own recollection as previously instructed. Defense counsel stated his preference for having the Court stenographer read back to the jury parceled portions gleaned from the direct and cross examination of both witnesses concerning their recovery of items including photographic

3

identification. This Court reasoned that reading back single portions of direct and cross-examination of both witnesses out of context from the entire testimony would create further confusion and invite further undue inquiry.

This Court employed its discretion appropriately by directing the jury to utilize their collective recollection. To permit the selective reading of direct and cross examination testimony from different witnesses as requested would unduly emphasize certain portions of the testimony out of context of recited circumstances. Similarly, unduly selecting portions of the trial testimony to be read aloud so close in time to the preceding live testimony was not warranted given the brevity of this trial. This trial court's decision and corresponding guidance given to this jury constituted an appropriate exercise of discretion.

Next, the Defendant argues in his Supplemental Statement that the trial court erred in failing to give a requested jury instruction, or any instruction that it could draw an adverse inference from the Commonwealth's failure to preserve and produce the drug buy money used by the police and allegedly recovered from the Defendant. The requested adverse instruction is outlined within the Pennsylvania Suggested Standard Criminal Jury Instructions, Third Edition, under Section 3.21B "Failure To Produce Document or Other Tangible Evidence At Trial," published by Pennsylvania Bar Institute and recites as follows:

1. There is a question about what weight, if any, you should give to the failure of (a party) (the Commonwealth) (the defendant) to produce an item of potential evidence at this trial (identify document or tangible item).
2. If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a common sense inference that item would have been evidence unfavorable to that party. The three necessary factors are:
    *First,* the item is available to that party and not to the other;
    *Second,* it appears that item contains or shows special information material to the issue; and
    *Third,* the item would not be merely cumulative evidence.

4

3. Therefore, if you find these three factors present and there is no satisfactory explanation of the (party's) (Commonwealth's) (defendant's) failure to produce (the item), (specify item), at this trial, you may infer, if you chose to do so, that it would have been evidence unfavorable to (that party) (the Commonwealth) (the defendant).

In the instant matter, it would have been unreasonable for the trial court to give the instruction simply because the original United States Currency bills used in this investigation were not physically retained from date of arrest to date of trial. There is an obvious practical need for the City of Philadelphia Police department to recirculate their limited supply of United States Currency to facilitate future criminal investigations. Simply stated there is not enough departmental money to store supplies of United States Currency as evidence and still enforce the law.

Moreover, as the officers testified in the instant case, the United States Currency bills utilized to facilitate the drug buys had been practically preserved for evidentiary purposes when the officers photocopied the unique serial numbers of each bill of the supplied before the narcotics purchase and after arrest. The photocopies of these bills, with corresponding numbers, were provided to the defense well in advance of trial. Thus, this evidence was reasonably made available to the Defendant. Zero factors existed that would have triggered the trial court's discretionary decision to provide the requested adverse inference instruction. To the contrary, the requested adverse inference instruction given by the Court would have unduly burdened the jury with unfair skepticism of the Commonwealth's case.

Finally, the Defendant takes issue with trial court's jury instructions given concerning the liability of a co-conspirator for substantive drug offenses. The Defendant claims, "After the trial and sentencing in this case, the Pennsylvania Supreme Court changed prior law by holding in *Commonwealth vs. Knox*, 105 A.3d 1194 (Pa. 2014), that liability for crimes committed by another

5

person is to be determined solely by assessing whether an individual is an accomplice under 18 Pa.C.S. §306. There is no statutory support for the trial court's erroneous prejudicial instructions that a defendant may also be found guilty (even if not an accomplice) if a co-conspirator committed the offense in furtherance of the conspiracy."

This claim erroneously assesses existing law concerning liability of a co-conspirator by interchangeably muddling the separate potential liability of an accomplice for other substantive crimes. Similarly, the Defendant entirely misstates the holding and impact of *Commonwealth vs. Knox*, 105 A.3d 1194 (Pa. 2014). Finally, the Defendant's assertion significantly misrepresents this Court's cumulative jury instructions that accurately and succinctly explained the independent potential theories of liability at issue given the facts presented.

With respect to this final confused and baseless claim, it is important to understand that the Commonwealth convincingly presented at trial three potential theories of liability to support the convictions of Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver A Controlled Substance under 35 §780-113 §(a)(30), as an ungraded Felony of the Controlled Substance, Drug, Device and Cosmetic Act and related offenses. The term "delivery," as used in this section means, "the actual, constructive or attempted transfer from one person to another of a controlled substance, of the drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. §780-102. It is well settled that any defendant who either actually or constructively transfers illegal narcotics is criminally liable as a principal. *Commonwealth v. Murphy*, 577 Pa. 275, 844 A. 2d 1228 (2004) citing 35 P.S. § 780-113(a) (30).

The testimony and physical evidence demonstrated that the Defendant Josh E. Stewart, at least once actively or constructively transferred illegal narcotics to a confidential informant from the subsequently searched residence. Additional physical evidence was introduced resulting from

6

the subsequent search of the same property that demonstrated the Defendant's joint dominion and control over this property from which he had sold illegal narcotics and that he been acting in concert with other persons who had actively sold the same type of illegal narcotics in the same manner as the defendant from the same location close in time to his sale. The trial court amply provided the jury explanations and definitions of each element of the drug offense. Thus, this jury could have ably decided that every element of the drug offense as charged had been proven beyond proven beyond a reasonable doubt because the Defendant acted as a principal dealer even without any understanding of the Defendant's culpability as a co-conspirator or as an accomplice.

In this case, however, the Defendant Josh E. Stewart, unlike the Defendant in *Knox*, as relied upon in his Supplemental Statement, had also been formally charged with the separate offense of Conspiracy- Manufacture, Delivery, or Possession With Intent to Manufacture or Deliver A Controlled Substance pursuant to 18 Pa.C.S. § 903, graded as a Felony of the Second Degree. Because the trial evidence also sufficiently supported the possible determination of the Defendant's culpability for the other substantive offenses charged as a co-conspirator or independently as an accomplice, this Court provided the jury with accurate instructions regarding the substantive crime elements identified within the standard jury instruction for Conspiracy, as well as providing due instructions concerning his potential culpability for the remaining substantive offenses as a co-conspirator or as an accomplice. Similarly, this Court correctly distinguished the two potential theories of liability of an accomplice and a co-conspirator.

It is undisputed that Section 903 of the Pennsylvania Crimes Code sets forth the elements of the crime of Conspiracy as follows:

> (a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

7

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. 18 Pa.C.S. § 903.

Thus, a person is deemed to be a conspirator if, "the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super.2011). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.*

The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Id.* On April 9, 2014 because ample evidence outlined all required elements supporting the separate charge of Conspiracy, this Court defined and outlined the offense elements verbatim from the Pennsylvania Suggested Standard Criminal Jury Instructions, Third Edition, as follows:

"In Pennsylvania, a conspiracy is an agreement between two or more persons to commit a crime. A conspiracy exists once two conditions are met. This is an agreement and one of the members then commits an act to help achieve the goal of conspiracy.

The first element of conspiracy is an agreement. It can be stated in words or unspoken but acknowledged. It can be an agreement in a sense that two or more people have come to an understanding that they agreed to act together to commit a crime or crimes. The agreement does not have to cover the details of how the crime will be committed. Nor does it call for all of them to participate in actually committing crime. They can agree that one of them will do the job.

What is necessary is that the parties do agree, in other words, do come to a firm understanding that a crime will be committed. Although the agreement itself is the essence of the conspiracy, a defendant cannot be convicted of conspiracy unless he or she or a fellow co-conspirator does something more that is an overt act in furtherance of the conspiracy.

8

An overt act is an act by any member of the conspiracy that would serve to further the goal of the conspiracy. The overt act can be criminal or noncriminal. And if its-as long as it is designed to put the conspiratorial agreement into effect.

This is to show that the parties have a firm agreement and they are not just thinking or talking about committing a crime. The overt act shows the conspiracy has reached the actin stage.

If a conspiracy actually commits or attempts to commit the agreed upon crime, that obviously would be an overt act in furtherance of the conspiracy. But a small act or step that is much more preliminary and a lot less significant than satisfying the overt act requirement.

The Commonwealth may prove a conspiracy by direct evidence or by circumstantial evidence. People who conspire often do the conspiring secretly, and try to cover it up afterwards. In many conspiracy trials, circumstantial evidence is the best or only evidence on the questions, of whether the conspirator shared the intent of promoting or facilitating committing object crime. Thus, you may, if you think it proper, infer that there was a conspiracy form the relationship, conduct, and acts of the defendant and his or her alleged co-conspirators and the circumstances surrounding their activities.

However, the evidence of this must support your conclusion beyond a reasonable doubt. A defendant cannot be convicted because he or she knew what the other or others were planning or were doing. It must be proof of an agreement between the defendant and another person or person to form or continue the conspiracy. To be proven guilty of being a co-conspirator, the defendant must have intended to act jointly with the other charges. It must have intended that the crime alleged to be the goal of the conspiracy would be committed."
(See Notes Testimony April 9, 2014, Pgs. 20-22)

This Court then followed the instructions concerning the elements of the offense of

Conspiracy by addressing and distinguishing the alternate theories of liability for the additional

substantive offenses charged as follows:

"All right, there are two basic ways that the one defendant may be criminally responsible for conduct committed by another person or person. These two ways may apply even if the defendant questioned was not present or at the time or place where the particular act occurred.

First way is for the defendant to be a member of the conspiracy. As I indicated to you before, there are certain elements that must be proven with respect to conspiracy.

Second, separate way one defendant can be proven liable for the conduct of another person when the defendant is an accomplice of the person who commits the crime at issue.

Okay, there is a basic difference between being an accomplice and being a co-conspirator. In a conspiracy, people agree to act jointly. In a conspiracy, a person

9

or persons does not have to agree to help someone else. A person is an accomplice if he or she on his own or her own acts to help the other person commit the crime.

More specifically, the defendant is an accomplice of another for a particular crime if the following two elements are proven beyond a reasonable doubt. The Defendant has the intent of promoting or facilitating the commission of that crime and the Defendant solicits commands, encourages or requests the other person to commit or aid or agrees to aid or attempts to aid the other person planning or committing it. It is important to understand that someone is not an accomplice merely because he or she is present when a crime is committed"
(See Notes of Testimony April 9, 2014, pgs. 23-24)

This Court's instructions were again given almost verbatim from the Pennsylvania Suggested Standard Criminal Jury Instructions, Third Edition. No objections were raised by the Defendant to any of the Court's instructions to the jury, except when this Court duly denied the adverse inference pursuant to Section 3.21 as previously discussed. Since this issue was not preserved through objection, it is waived.

Within a very brief time after being excused to deliberate, the jury communicated, "We the jury would like clarification on the legal definition off conspiracy please. Specifically, we would like to know if a perp admits another person into a home knowing a crime will be committed, does that constitute as conspiracy?" In response, this Court repeated the standard instructions previously given without objection of either party through their respective attorney. In fact, there were approximately eight written compound communications addressed diligently by this Court. The only other raised objection on behalf of the Defendant was in reference to the request to separately read intermingled portions of testimony from two officers previously discussed. Again, since this issue was not preserved through objection, it is waived.

The Defendant's final claim raised within the Supplement Statement is that the undisputed validity of the instructions given by this Court, in the Defendant's perception of the Pennsylvania's Supreme Court's subsequent holding in *Knox*, retroactively nullified the instructions. The Defendant's argument is fatally flawed in multiple respects. First, the claim fails to recognize the

10

distinguishable fact pattern upon which the Court's reasoning was based. In *Knox*, the Defendant was not charged with conspiracy, rather he was charged with possession of a firearm alleged possession of a firearm. Second, the holding of the Pennsylvania Supreme Court is completely misstated. The *Knox* case does not stand for the overly broad and erroneous position stated on behalf of this Defendant. Third, there is absolutely no impact retroactive impact to the case at issue from Knox. Finally, the claim attempts to insert language and a proposition into this Court's instructions concerning the liability of a co-conspiracy given at Josh Stewart's trial that was neither stated nor remotely implied.

CONCLUSION

In reviewing the entire record, this Court finds no harmful, prejudicial, or reversible error. Accordingly, the judgment of the trial court should be affirmed.

By the Court,

DATE: *April 3, 2017*.

Anne Marie B. Coyle, J.

11