844 A.2d 1228

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ronald L. MURPHY, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 20, 2003.

Decided March 22, 2004.

James Brian Rader, Harrisburg, for Ronald Murphy, appellant.

Scott Alan McCabe, Sandra Ilene Thompson, Christian J. Dabb, for the Com. of PA, appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION OF THE COURT

Justice NIGRO.

Appellant Ronald Murphy ("Murphy") appeals from the Superior Court's order affirming the judgment of sentence imposed against him by the Court of Common Pleas of York

County as a result of his convictions for delivery of a controlled substance, 35 P.S. § 780–113(a)(30),[1] and for conspiracy to deliver a controlled substance,18 Pa.C.S. § 903.[2] We affirm.

On August 30, 2000, Pennsylvania State Trooper Timothy Longenecker, a member of the York County Drug Task Force, drove to the intersection of Queen and Liberty Streets in the City of York to make a controlled undercover purchase of heroin. Trooper Longenecker parked his car across the street from an apartment building where Murphy was seated on the front steps. The trooper exited his car, approached Murphy, and asked him if he knew where to buy some "dope," which the trooper testified was slang for heroin. *See* N.T., 3/9/2001, at 66. Murphy responded by asking Trooper Longenecker if he was a "cop." *See id.* After the trooper answered no, Murphy called out to another man across the street, Jose Rivas ("Rivas"), and asked him to come over. *See id.* at 66, 89.

Rivas walked over to the trooper and Murphy and immediately asked Murphy whether the trooper was a cop, to which Murphy replied "no, he's cool." *See id.* at 66. Rivas then turned to Trooper Longenecker and asked him how much drugs he wanted. *See id.* Trooper Longenecker stated that he wanted two bags. *See id.* at 67. Rivas told the trooper to "wait here" and then walked north down Queen Street. *See id.* Trooper Longenecker and Murphy remained behind and engaged in casual conversation. *See id.*

Several minutes later Rivas returned to Murphy and Trooper Longenecker and told Trooper Longenecker to follow him. *See id.* at 67. The two walked east on Liberty Street about one-half of a block. *See id.* at 93. At that point, Rivas dropped two bags of heroin on the ground and told the trooper to likewise drop the payment on the ground.[3] Trooper Longe-

1. Act of April 14, 1972, P.L. 233, No. 64, § 13.
2. Act of December 6, 1972, P.S. 1482, No. 334, § 1.
3. The substance in the bags was later positively identified as heroin based on chemical testing. N.T., 3/8/2001, at 36.

necker picked up the drugs, dropped two previously marked twenty-dollar bills on the sidewalk, and walked away. *See id.* at 67. As he walked, he turned around and saw Rivas picking up the money he had left on the sidewalk. *See id.* at 68, 94.

When the trooper reached his car, Murphy approached him and asked for half of a bag of heroin. *See id.* at 68. Although the trooper refused to give Murphy any drugs, he handed Murphy $5.00 before getting in his car and leaving the scene. *See id.* Moments later, other members of the York County Drug Task Force arrested Rivas and Murphy. Rivas was arrested in a grocery store approximately half of a block from the intersection where the drug transaction took place. *See* N.T., 3/8/2001, at 53. When he was arrested, he had the two marked bills used by Trooper Longenecker to buy the drugs. *See* N.T., 3/9/2001, at 101. Murphy was arrested as he crossed a street in the vicinity of where the drug sale took place. *See* N.T., 3/8/2001, at 35. Murphy only had a couple of dollars on him when he was arrested. *See id.* at 48. He did not have any drugs. *See id.* at 49.

Due to his participation in the transaction, Murphy was charged with the offense of delivery of a controlled substance as well as the offense of conspiracy to deliver a controlled substance. A jury trial was held on the charges on March 8 and 9, 2001. After the Commonwealth presented its case, Murphy moved for a judgment of acquittal on the basis of the "buyer's agent defense," which he argued was accepted by this Court in *Commonwealth v. Flowers*, 479 Pa. 153, 387 A.2d 1268 (1978).[4] According to Murphy, because the evidence only showed that he introduced Trooper Longenecker to Rivas at the request of the trooper and that he did not further engage in the sale, he acted solely as the trooper's agent, *i.e.,* the "buyer's agent" during the transaction and thus, pursuant to *Flowers,* he could not be liable for the delivery related charges against him. The trial court, however, found that the evidence

4. As explained *infra,* in *Flowers,* this Court found that a defendant could not be liable as an accessory to the delivery of drugs if he *solely* acted on behalf of the drug buyer. *See Flowers,* 387 A.2d at 1272–73.

was sufficient to convict Murphy of the charges and therefore denied his motion.

After all of the evidence was presented and prior to the jury's deliberations, Murphy requested an instruction on the "buyer's agent defense." The trial court denied the request, finding that the standard conspiracy instruction, which explained that the evidence must show that the co-conspirator intended to commit the crime and that mere presence at the crime scene was insufficient to establish such intent, satisfied Murphy's concerns with regard to the buyer's agent defense. The trial court subsequently gave such a conspiracy instruction as well as a similar instruction on accomplice liability.[5] Following their deliberations, the jury convicted Murphy of both charges. As a result of his convictions, the trial court sentenced Murphy to twenty-three to forty-six months of incarceration on each conviction, with the two sentences to run consecutively.

Murphy appealed to the Superior Court, arguing that the evidence was insufficient to convict him of the delivery and conspiracy charges and that the trial court erred in refusing to instruct the jury on the "buyer's agent defense." As an initial matter, the Superior Court found that the evidence was insufficient to establish that Murphy was liable as a principal for

---

5. In its conspiracy instruction, the trial court stated as follows:

> The Defendant is not guilty unless he and the other had an agreement; that is, a common understanding and shared the intention to commit delivery of heroin.... [I]f you convict the Defendant of the conspiracy charge, it must be because he was a party to a conspiracy and not just a knowing spectator to a crime committed by his companions.

N.T., 3/9/03, at 183.

> With regard to accomplice liability, the trial court instructed:

> A Defendant is guilty of a crime if he is an accomplice of another person who commits that crime. A Defendant does not become an accomplice merely by being present at the scene or knowing about a crime. He is an accomplice if with the intent of promoting or facilitating the commission of the crime, he solicits, commands, encourages, or requests the other person to commit it or aids, agrees to aid, or attempts to aid the other person in planning on committing it.

*Id.* at 185–86.

delivering a controlled substance.[6] *See Commonwealth v. Murphy*, 795 A.2d 1025, 1030–33 (Pa.Super.2002). Nevertheless, the Superior Court determined that there was sufficient evidence for the jury to convict Murphy for delivering a controlled substance as an accomplice. *See id.* at 1033–37. In particular, the Superior Court found that the jury could have found that Murphy aided Rivas in delivering the contraband with the intent to do so in light of the evidence showing that Murphy called out to Rivas after learning that Trooper Longenecker was not a police officer and that he then assured Rivas that the trooper was "cool." *Id.* Furthermore, the Superior Court determined that Murphy had an active interest in the sale and had not merely introduced the trooper to Rivas as a "friendly gesture of accommodation," as the appellant in *Flowers* had, because Murphy sought recompense from the trooper following the transaction. *See id.*

The Superior Court also found that the evidence was sufficient to convict Murphy of conspiring to deliver the drugs with Rivas. *See id.* at 1037–39. According to the court, the jury could have inferred that Murphy and Rivas had an agreement by which Murphy screened prospective drug buyers for Rivas to sell drugs to on the basis of the evidence showing that when Rivas came over to Murphy and the trooper after being called, he promptly asked Murphy whether the trooper was a "cop" and then, without asking any further questions, asked Trooper Longenecker how much drugs he wanted. *See id.* The Superior Court then determined that the trial court properly refused to instruct the jury regarding the "buyer's agent defense," finding that the defense was inapplicable as the

6. In making this decision, the Superior Court found that Murphy could only be liable as a principal for delivering the drugs if he actually or constructively transferred the drugs to Trooper Longenecker. *See Commonwealth v. Murphy*, 795 A.2d 1025, 1030–31 (Pa.Super.2002) (citing definition of "delivery" in 35 P.S. § 780–102). The Superior Court then determined that Murphy had not actually transferred the drugs because there was no evidence showing that he physically conveyed the drugs to Trooper Longenecker. *See id.* at 1031. The Superior Court further found that Murphy had not constructively transferred the drugs because there was no evidence that Murphy had control over the drugs conveyed to the trooper by Rivas or that he directed Rivas to convey the drugs. *See id.* at 1032–33.

evidence supported the delivery related charges against Murphy. *See id.* at 1040. Accordingly, the Superior Court affirmed Murphy's judgment of sentence.

Murphy filed a petition for allowance of appeal to this Court arguing that the lower courts erred in finding that the evidence was sufficient to support his convictions because such a decision contradicts this Court's decision in *Commonwealth v. Flowers,* 479 Pa. 153, 387 A.2d 1268. We granted allowance of appeal and now affirm the decision below.

In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Rivera,* 565 Pa. 289, 773 A.2d 131, 135 (2001). If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction.[7] *Id.*

The offense of delivery of a controlled substance is provided for in section 780–113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, (the "Act").[8] According to that section, the offense occurs in the following circumstances:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30). The term delivery, as used in this section, is defined by the Act as "the actual, constructive, or

---

7. Notably, "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Lambert,* 795 A.2d 1010, 1014 (Pa.Super.2002), *alloc. denied,* 569 Pa. 701, 805 A.2d 521 (2002).

8. *See supra* n. 1, 35 P.S. §§ 780–101—780–144.

attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780–102. Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so. *See Commonwealth v. Metzger*, 247 Pa.Super. 226, 372 A.2d 20, 22 (1977) ("[t]he offensive conduct is simply the 'actual, constructive or attempted transfer from one person to another' of the prohibited substance").

A defendant actually transfers drugs whenever he physically conveys drugs to another person.[9] *See Commonwealth v. Cameron*, 247 Pa.Super. 435, 372 A.2d 904, 907 (1977); Black's Law Dictionary 1504 (7th ed. 1999). Similarly, as was well explained by the Superior Court below, a defendant constructively transfers drugs when he directs another person to convey drugs under his control to a third person or entity. *See Murphy*, 795 A.2d at 1031–33 (finding, after review of dictionary definition of term as well as interpretation of term by other jurisdictions, that "constructive transfer" means that transferor directed another to convey drugs that were under the transferor's control to a third person); *see also* Black's Law Dictionary 1503 (7th ed. 1999).

It is well-established, however, that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor. *See* 18 Pa.C.S. § 306; *see also Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688, 690 (1978) (the actor and his accomplice share equal responsibility for commission of a criminal act). A person is deemed an accomplice of a principal if "with the intent of promoting or facilitating the commission of the offense, he: (i) solicit[ed the principal]

9. As an agency relationship with the seller is not required for a person to be liable for the delivery of drugs, *see* 35 P.S. § 780–113(a)(30), a defendant may be liable as a principal for delivering drugs even if he physically conveyed drugs to a drug buyer solely on the buyer's behalf. *See e.g., United States v. Pruitt*, 487 F.2d 1241, 1244–45 (8th Cir.1974); *State v. Allen*, 633 N.W.2d 752, 755–56 (Iowa 2001).

to commit it; or (ii) aid[ed] or agree[d] or attempt[ed] to aid such other person in planning or committing it." 18 Pa.C.S. § 306; *Commonwealth v. Spotz,* 552 Pa. 499, 716 A.2d 580, 585 (1998). Accordingly, two prongs must be satisfied for a defendant to be found guilty as an "accomplice." *See Commonwealth v. Woodward,* 418 Pa.Super. 218, 614 A.2d 239, 242 (1992). First, there must be evidence that the defendant intended to aid or promote the underlying offense. *See id.* Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. *See id.* While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. *See Commonwealth v. Wagaman,* 426 Pa.Super. 396, 627 A.2d 735, 740 (1993). There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. *See id.* With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime. *See Commonwealth v. Cox,* 546 Pa. 515, 686 A.2d 1279, 1286 (1997).

In the instant case, because there is no evidence that Murphy physically conveyed the drugs to Trooper Longenecker or directed Rivas to convey drugs that were under his control to the trooper, we agree with the Superior Court that the evidence was insufficient for the jury to convict Murphy as a principal for the delivery of the drugs. We also agree with the Superior Court, however, that the evidence was sufficient for the jury to find that Murphy was Rivas' accomplice in the drug delivery. Thus, we reject Murphy's argument that we must reverse the Superior Court's decision based on *Commonwealth v. Flowers,* 479 Pa. 153, 387 A.2d 1268.

In *Flowers,* an undercover police officer approached the appellant, Donald Flowers, while he was standing in a public square and asked him if he had any drugs. 387 A.2d at 1270. Flowers replied that he did not and the officer walked away. *Id.* A few minutes later, another man, George Shiner, came up

to Flowers and spoke with him. *Id.* Flowers subsequently called the officer over, introduced him to Shiner, and told him that Shiner had some marijuana. *Id.* The three individuals then drove in the officer's car to Shiner's residence where they met a fourth person, John Dustin, who sold marijuana to the officer. *Id.* Flowers was charged and convicted as an accessory before the fact, 18 P.S. § 5105 (repealed),[10] for his participation in the drug sale pursuant to 35 P.S. § 780–113(a)(30). *See Flowers*, 387 A.2d at 1270.

The Superior Court affirmed Flowers' conviction, finding that the evidence was sufficient to convict him as an accessory to the sale because the sale would not have occurred but for Flowers' introduction of the officer to Shiner. *See id.* On appeal, this Court reversed. We found that the Superior Court improperly applied a causation test in determining whether the evidence established that Flowers had aided and abetted in the crime. *See id.* at 1270–71. We explained that the Superior Court should have instead considered whether the evidence established that Flowers "was an active partner in the intent to make [the] sale."[11] *Id.* at 1271. We then determined that the evidence did not indicate that Flowers

**10.** That statute provided that a person would be deemed an accessory before the fact if he "plan[ned], cooperate[d], assist[ed], aid[ed], counsel[ed] or abet[ted] in the perpetration of a felony." *Flowers*, 387 A.2d at 1270.

**11.** In making this determination, we cited the following reasoning of the United States Court of Appeals of the Sixth Circuit:

> If the criterion for holding that one is guilty of procuring the commission of an offense, is that the offense would not have been committed except for such a person's conduct or revelation of information, it would open a vast field of offenses that have never been comprehended within the common law by aiding, abetting, inducing or procuring. As Judge Hand remarked, in *United States v. Peoni*, [100 F.2d 401 (2nd Cir.1938)], 'It will be observed that all these definitions have nothing whatsoever [sic] to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed. All the words used, even the most colorless, "abet," carry an implication of purposive attitude towards it.' [sic]

*Flowers*, 387 A.2d at 1271 (*quoting Morei v. United States*, 127 F.2d 827, 831 (6th Cir.1942)).

had any intent to actively participate in the drug sale. *See id.* In doing so, we explained:

The uncontroverted evidence is that appellant approached neither Shiner nor the agent. The agent first approached appellant and asked him for drugs, and appellant's answer was simply that he had none. The prosecution does not contend that he offered to obtain any, or that he made any suggestions as to where or from whom it might be procured. There is no evidence that he met Shiner by design or plan, or that Shiner was any more than a passing acquaintance. The evidence establishes only that shortly after the agent's request Shiner came over to appellant and his friend, and that appellant then suggested to the agent that Shiner had marijuana. The evidence implies more a friendly gesture of accommodation than an intent to bring about a sale, especially when viewed in light of the total absence of any allegations that appellant benefited in any way from the transaction. The evidence is that appellant did not handle either cash or marijuana, did not enter into negotiations or delivery, and was present only passively during the ride to Shiner's residence and the transaction thereafter. None of the evidence proves beyond a reasonable doubt that appellant had any interest whatsoever in whether this sale ever took place.

*Id.*

Putting aside our finding that Flowers did not have any intent to aid in the drug sale, we then pointed out that "if Flowers [could] be said to have assisted anyone [during the transaction,] it was the buyer, not the seller." *Id.* at 1272. We explained that as Flowers had been charged as an accessory to the delivery of the drugs under 35 P.S. § 780–113(a)(30), there had to be some evidence that he aided or collaborated with the drug deliverers for him to be liable as an accessory to that offense. *See id. (citing to Commonwealth v. Simione, 447 Pa. 473, 291 A.2d 764 (1972)).*[12] However, we could not

---

12. In *Simione,* the appellant arranged a drug sale at the buyer's request and then exchanged the money and drugs between the buyer and seller. *See Simione,* 291 A.2d at 765–66. The Commonwealth charged the

find any evidence that Flowers had acted for or with Shiner or Dustin. *See id.* Therefore, because we could not find any evidence that Flowers had an intent to actively aid in the drug sale or had, in fact, aided or associated with the drug deliverers in delivering the drugs, we determined that there was insufficient evidence to convict him as an accessory to the delivery of the drugs under 35 P.S. § 780–113(a)(30). *See id.* at 1272–73.

 Contrary to Murphy's claims, we find that the evidence in the instant case is not only more substantial than that presented in *Flowers*, but also clearly sufficient to convict Murphy as an accomplice to the delivery of the drugs. As previously noted and as made clear by this Court in *Flowers*, for a defendant to be deemed an accessory to a crime, there must be evidence that the defendant had an intent to promote or actively aid in the commission of the crime as well as evidence that the defendant actually aided the principal in committing the crime. *See* 18 Pa.C.S. § 306. Accordingly, for a defendant to be an accessory to the offense of delivering drugs, the defendant must have had the intent to actively aid in the delivery and then aided the deliverer.[13] *See e.g.*, *Flowers*, 387 A.2d at 1272–73.

appellant in its bill of particulars with the "sale" of drugs and the appellant was convicted of that charge. *See id.* In reviewing on appeal whether the appellant's conviction was proper, this Court found that the appellant had only acted on behalf of the drug buyer. *See id.* at 768. We found that there was no evidence that the appellant had assisted the drug seller or had any interest in the sale. *Id.* at 767–68. After reviewing case law from other jurisdictions that had considered whether a defendant was liable for a drug "sale" under similar factual circumstances, this Court found that "one who acts solely as the agent of the buyer cannot be convicted of a 'sale' of an unlawful drug." *Id.* at 767–68.

**13.** Although this Court stated in *Flowers* that Flowers could only be liable as an accessory under 35 P.S. § 780–113(a)(30) if the evidence showed that he "was an active partner in the intent to make [the] 'sale,'" *Flowers*, 387 A.2d at 1271, our statement was unnecessarily too restrictive. Where a defendant is charged as an accessory to the delivery of drugs under 35 P.S. § 780–113(a)(30), the evidence must show only that he had an intent to actively participate in the drug delivery, not the "sale." *See e.g.*, *Simione*, 291 A.2d at 767–68. Thus, the prosecution does not have to prove that the defendant intended to

Here, we find, as did the Superior Court, that the jury could have found that Murphy intended to aid in the transfer of drugs by Rivas to Trooper Longenecker based on the evidence that Murphy called out to Rivas after the trooper approached him, confirmed to Rivas that the trooper was not a police officer, stayed with the trooper while Rivas got drugs, and requested compensation from the trooper for his efforts. These acts were clearly sufficient for the jury to infer that Murphy wanted to actively assist Rivas in delivering drugs to the trooper so that he could seek drugs from the trooper afterwards. *See Wagaman*, 627 A.2d at 740 (a reasonable inference of guilt may be made where the facts and conditions proved establish that the inference is more likely than not); *see also Spotz*, 716 A.2d at 586 (jury could have reasonably concluded that the appellant intended to facilitate the murder by her acts of driving with the co-conspirator and victim to secluded place and asking victim questions to determine when she would be missed); *Commonwealth v. Pierce*, 437 Pa. 266, 263 A.2d 350, 351 (1970) (jury could conclude that the appellant intended to assist in the murder based on his presence at scene and his shout that started the fight with the victim). Murphy's actions were also distinguishable from those of Flowers as Flowers did not affirmatively seek Shiner's assistance after the undercover officer approached him. Rather, Shiner approached Flowers. *See Flowers*, 387 A.2d at 1270. Additionally, although Flowers called the officer over after speaking to Shiner, there was no evidence that Flowers vouched for the officer's credibility to Shiner or Dustin. *See id.* Moreover, Flowers did not request any compensation from the officer for introducing him to Shiner. *See id.* Thus, the facts and circumstances in *Flowers*, as opposed to the facts and circumstances present in this case, indicated that the appellant had solely introduced the officer to a potential drug

be involved in the actual "sale" by presenting evidence, for example, that he would financially benefit from the sale or worked for the seller to promote the sale. *See id.* Instead, the prosecution must only produce evidence establishing that the defendant wanted to actively aid in transferring drugs to another. *See Cameron*, 372 A.2d at 907.

deliverer as a friendly gesture, rather than as an attempt to obtain some type of return for his efforts. *See id.* at 1271.

We also find that the evidence showed that Murphy aided Rivas, the principal drug deliverer, in transferring drugs to the trooper based on the evidence that he screened the trooper by asking him if he was a police officer before calling Rivas, and that he then confirmed for Rivas that the trooper was okay to sell drugs to. While this evidence taken alone may have been insufficient for the jury to find that Murphy was aiding Rivas, rather than the trooper, we find that this evidence, when considered with the evidence that Rivas knew upon being called by Murphy that the trooper was interested in buying drugs, and that Rivas also immediately asked Murphy if the trooper was a "cop," was sufficient for the jury to find beyond a reasonable doubt that Murphy was acting on Rivas' behalf when he questioned the trooper about his status and then conveyed the trooper's answer to Rivas. *See Cox,* 686 A.2d at 1286 (if the defendant renders aid "to encourage another to commit the crime and [it] actually has this effect, no more [evidence] is required" to establish that the defendant assisted the principal in committing the crime); *Commonwealth v. Coccioletti,* 493 Pa. 103, 425 A.2d 387, 390 (1981) (a minor degree of assistance is adequate to establish accomplice liability). Thus, unlike in *Flowers,* the evidence here did not solely establish that Murphy acted on behalf of the drug buyer, but rather, it also showed that he was acting for the drug deliverer. *See Flowers,* 387 A.2d at 1272. Accordingly, because the evidence showed that Murphy intended to aid in the drug delivery and then actually aided the deliverer in making that delivery, we find that the evidence was sufficient to establish that Murphy was an accomplice to the delivery and affirm his conviction for that charge.[14]

14. Murphy argues that because he assisted the trooper during the transaction, he can only be liable as an accessory to the offense of purchasing drugs provided for in 35 P.S. § 780–113(a)(19) (criminalizing "[t]he intentional purchase ... of any controlled substance ... from any person not authorized to sell" the substance). While we agree with Murphy that he could *only* be liable for purchasing drugs if the evidence showed that he had *only* assisted the trooper, the evidence here showed that he aided both the trooper and Rivas. Therefore,

Next, we must consider whether the evidence was sufficient for the jury to convict Murphy of conspiracy to deliver heroin with Rivas. To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. *Spotz*, 716 A.2d 580, 592 (1998); *see also* 18 Pa.C.S. § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators. *See Spotz*, 716 A.2d at 592; *Lambert*, 795 A.2d at 1016.

As with accomplice liability, "[m]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. *Lambert*, 795 A.2d at 1016. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. *See id.; see also Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456, 464 (1998). Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. *See Spotz*, 716 A.2d at 592. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by "the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.* Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act. *See Commonwealth v. Wayne*, 720 A.2d at 463–64.

We find that the evidence in the instant case was sufficient for the jury to convict Murphy of conspiracy to deliver the

based on his aid to Rivas, Murphy could be liable for the delivery of drugs.

drugs. As discussed above, the jury could have found that Murphy intended to aid Rivas in delivering the drugs based on his acts of questioning the trooper to determine if he was a police officer, calling out to Rivas and confirming for Rivas that the trooper was not a police officer, and requesting drugs from the trooper after the sale was complete. Moreover, we find, as did the Superior Court, that the jury could have found that Murphy and Rivas had an agreement whereby Murphy would screen drug buyers before introducing them to Rivas based on Murphy's acts of questioning the trooper and calling out to Rivas, and the evidence that Rivas knew upon being called by Murphy that the trooper was interested in buying drugs. *See e.g., Commonwealth v. Clark,* 256 Pa.Super. 97, 389 A.2d 619, 621 (1978) (jury could infer that the defendant had an agreement to sell drugs to co-defendant based on co-defendant's statement that was he was going to purchase drugs from defendant in bathroom and evidence that both men subsequently went into bathroom); *Commonwealth v. Mills,* 329 Pa.Super. 196, 478 A.2d 30, 33 (1984) (finding that the defendant could not be liable for conspiracy to deliver drugs as there was absolutely no evidence that the defendant "knew [the drug seller] or had any prior dealings with him nor was there evidence that the [defendant] was to participate in or profit from the transaction"). Finally, we find that the overt act requirement was satisfied because Rivas actually delivered the drugs to the trooper. Accordingly, we affirm Murphy's conviction for conspiracy.

The Order of the Superior Court is affirmed.