J-S72010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
JESSICA HARVENA SUMMERS   :
  :
Appellant   :   No. 910 MDA 2018

Appeal from the Judgment of Sentence May 6, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001071-2016

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:          **FILED DECEMBER 27, 2018**

Jessica Harvena Summers appeals from the judgment of sentence of one to four years imprisonment after she was convicted of theft by unlawful taking.  We affirm.

The trial court offered the following summary of the trial evidence.

Garin Loy Moore, Jr. testified that he lives on Azalea Road in Tower City, Pennsylvania, which is a very rural, wooded area with a number of cabins on the same road.  Valorie and Rodney Rosi, parents of [Appellant], are neighbors of Mr. Moore; the Rosis live two doors down from Mr. Moore and he has known them for approximately twelve years.

On January 28, 2015, Mr. Moore drove up his road and observed a gold Toyota with Maryland license plates sitting in front of the Rosi[s'] driveway; there were two individuals standing in front of the cabin and there was approximately eight inches of snow on the ground that day.  Mr. Moore approached the couple and noticed that the man, Jason Summers, was fiddling with one of the front windows and [Appellant], Jason Summers['s] wife, appeared to be looking for something on the porch.  Mr. Moore called out to them from the driveway, at which point [Appellant] recognized Mr. Moore, asked how he was, and identified herself

as Valorie Rosi's daughter. She told Mr. Moore that she left her cell phone inside and was trying to get in to retrieve it. Mr. Moore testified that [Appellant] told him that Valorie Rosi knew [Appellant] was there. Mr. Moore returned to his home and called [Appellant]'s father, Rodney Rosi, to confirm the story. When Mr. Rosi returned his call, he told Mr. Moore that [Appellant] and her husband were not supposed to be there, and asked Mr. Moore to ask them to leave the premises. Mr. Moore returned to the Rosi[s'] cabin, and both individuals were already inside. The front door was ajar, so Mr. Moore yelled in and told them that they were not supposed to be there and they had to leave or he would call the police. He testified that it sounded as though someone behind the door was rustling through things, and moving things around. When [Appellant] and her husband left the cabin, Mr. Moore observed that [Appellant] was not properly dressed for the weather; she was only wearing a sweatshirt and sweatpants. However, Jason Summers was wearing a long parka that appeared to be very bulky. Mr. Moore watched the couple drive away.

Rodney Rosi also testified at trial. He stated that his cabin had been in the family since 1972 and he inherited it in 2007. He and his wife use it as a "get away" every two weeks or every month. Mr. Rosi also testified that he and his wife's relationship with [Appellant] is "estranged at best." He stated that his daughter had lived with him and his wife ([Appellant]'s mother) on and off, and that they had to ask her to leave at some point due to her heroin use. Mr. Rosi was asked about guns that he kept at the cabin, and he testified that he had approximately twelve guns, all of which he inherited from his father. Mr. Rosi admitted that it should have been assumed that [Appellant] would not be allowed at the cabin without getting permission ahead of time, but could not recall for sure whether he communicated this to [Appellant].

[Appellant]'s mother, Valorie Rosi, was also called as a witness. She testified that on the day in question she was working in Mechanicsburg and was notified by her husband that her daughter and son-in-law were up at the cabin. Ms. Rosi drove up to the cabin and found the door open, the lights on, and a ladder that had been moved near a cherry cabinet. The cabinet stored all of the hand guns, and was kept unlocked. Ms. Rosi immediately called the police when she realized that guns were missing. She provided information to the officers regarding her neighbor seeing [Appellant] and [Appellant]'s husband at the cabin. Ms. Rosi

testified that neither her daughter nor her son-in-law reached out for permission to go to the cabin. When asked if they had permission to go to the cabin in general, Ms. Rosi stated that "she knows if she wants to go up she can go up. It's a family cabin." Ms. Rosi was asked whether her daughter told her anything about the guns. Ms. Rosi responded that her daughter told her that when they were confronted Jason (her husband) got angry and took the guns.

Trooper Nicholas Zulick of the Pennsylvania State Police testified that he was called to Azalea Road to meet with Ms. Rosi, who reported that her cabin had been burglarized. He learned that there were guns missing from the inside of the residence and observed a gun cabinet that had been emptied. Trooper Zulick returned to the station, Ms. Rosi looked up the serial numbers of the guns in question and called the station to report the value, serial numbers, make, and model. There were six handguns stolen. With that information, Trooper Zulick created a property record to indicate what was stolen. All of this information was then entered into the National Crime Information Center (NCIC). Trooper Zulick also received the information about the gold Toyota with a Maryland registration plate[, a vehicle registered to Appellant's husband]. On September 24, 2015, an alert was received that one of the firearms was recovered in Baltimore, Maryland. It was item number one on the property list, with a serial number of N78100.

Finally, Kent Drummond of the Howard County Police Department in Maryland testified that he interviewed [Appellant] on December 16th of 2015. It was recorded and played for the jury during trial. The essence of her statement was that she realized only after she got into the car leaving the cabin that Jason had taken firearms and did not know prior to that that there were guns in the cabin. [Appellant] admitted to using a credit card to get into the cabin door. She also admitted that she and her husband were caught up in heroin. After initially claiming she did not know there were guns in the cabin, she stated, "Okay, look, you can find two of them in Baltimore, the other four, we had nothing to do with." She said that both were handguns and both were very small. According to the statement, she was not the one who took them and did not want anything to do with them afterwards. [Appellant] also changed her story regarding why she was trying to get into the cabin in the first place. Initially it was

because she had left her cell phone inside, and later implied that they had been looking for a place to stay.

Trial Court Opinion, 8/14/18, at 1-4 (citations and footnote omitted).

Appellant was charged with numerous offenses, including burglary, conspiracy to commit burglary, theft by unlawful taking, and criminal mischief. The trial court granted judgment of acquittal as to the burglary and conspiracy counts, and a jury found Appellant not guilty of criminal mischief; however the jury convicted Appellant of theft by unlawful taking. On May 6, 2018, Appellant was sentenced as indicated above.

Appellant filed a timely notice of appeal, and both she and the trial court complied with Pa.R.A.P. 1925. Appellant presents one question for this Court's consideration: "Whether the evidence at trial was insufficient to prove that Appellant removed any property from the residence in question or acted as an accomplice with her co-defendant, Jason Summers." Appellant's brief at 4.

The following principles apply to Appellant's claim. Evidentiary sufficiency is a question of law and "our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Williams**, 176 A.3d 298, 305 (Pa.Super. 2017).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the

- 4 -

evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Id*. at 305-06.

Appellant was convicted of theft by unlawful taking. "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Appellant does not dispute that her parents' property was unlawfully taken with the intent to deprive them of it. Rather, she suggests that the evidence failed to establish that she is culpable for the theft.

"A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." 18 Pa.C.S. § 306(a). One is legally accountable for another person when one acts as that person's accomplice. 18 Pa.C.S. § 306(b)(3). The definition of an accomplice includes the following: "A person is an accomplice of another person in the commission of an offense if: (1) with the intent of promoting or facilitating the commission of the offense, he: . . . (ii) aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S. § 306(c).

> Two prongs must be satisfied for a person to be labeled an accomplice. First, there must be evidence that the person intended to aid or promote the underlying offense. Second, there must be evidence that the person actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. Further, a person cannot be an accomplice simply based on evidence that he

- 5 -

knew about the crime or was present at the crime scene. There must be some additional evidence that the person intended to aid in the commission of the underlying crime, and then aided or attempted to aid. For purposes of accomplice liability, no agreement is required, only aid. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime. The least degree of assistance in committing the offense is adequate to sustain the finding of responsibility as an accomplice.

***Commonwealth v. Adams***, 39 A.3d 310, 324 (Pa.Super. 2012) (cleaned up).

Appellant contends that the Commonwealth's evidence was insufficient to establish her guilt of theft by unlawful taking because "there is no evidence that there was an express agreement between Appellant and Jason Summers to steal handguns from her parent's cabin, nor was there evidence that Appellant had the intent to aid, or attempted to aid, Jason Summers in committing the theft." Appellant's brief at 13. Appellant's argument continues as follows:

Appellant's statements to Detective Drummond indicated the opposite, that she was unaware that her husband had taken the firearms until after they had left the cabin, and that she wanted no part in whatever it was that he planned on doing with them. Further, Mr. Moore testified that when he went to the door of the cabin Jason Summers was behind the door, where the cherry cabinet is located, and Appellant could be heard in another part of the cabin.

. . . Appellant told the police that she did not realize that Jason Summers had taken the guns from the cabin until they were in the car, and she further told the police that she wanted nothing to do with them. The Commonwealth presented no evidence to the contrary, therefore the evidence presented at trial was insufficient to prove Appellant guilty of theft.

*Id*. at 13-14. Appellant asserts that her mere presence at the scene or knowledge of the crime cannot establish her liability as an accomplice. *Id*. at 14 (citing **Commonwealth v. Murphy**, 844 A.2d 1228, 1234 (Pa. 2004)).

The trial court addressed Appellant's claim as follows:

> The evidence in this case indicates that [Appellant] and her husband drove from their home in Maryland after a snow storm to the cabin with no key. [Appellant]'s story changed from looking for her forgotten cell phone to finding a place to stay. [Appellant] was not dressed for the weather and forced her way into the cabin. There was no evidence of the couple having any overnight bags with them and they were heard rummaging through the cabin. Six hand guns were missing after the couple were asked to leave. [Appellant] initially denied knowing anything about the guns, but then admitted to seeing the guns in the car after leaving the cabin. She also told the officers that they could find two of them in Baltimore. At least one of the handguns was recovered in Baltimore, MD. The foregoing clearly establishes that the guns were unlawfully taken with the intent to deprive the owner thereof. It can be inferred from the circumstantial evidence elicited in this case that [Appellant], at the very least, aided or attempted to aid in the unlawful taking of the handguns. Given the testimony presented, it is not a stretch to deduce that [Appellant] knew what her husband was looking for in the cabin, and helped him carry out a plan to take the guns and eventually sell them in the Baltimore area.

Trial Court Opinion, 8/14/18, at 6-7.

We fully agree with the trial court's assessment. Aid and intent to aid may be established by circumstantial evidence. **Murphy**, **supra** at 1234. Here, Appellant's inconstant and implausible statements about her reasons for being at the cabin support the finding that her intent in going to her parents' cabin was not any of the innocent explanations she offered, but rather was to aid her husband's crime. **See**, **e.g.**, **Commonwealth v. Shank**, 883 A.2d

658, 667 (Pa.Super. 2005) (holding defendant's conduct prior to other individual's commission of theft was sufficient circumstantial evidence to demonstrate shared intent). Further, she did in fact aid the theft by attempting to placate Mr. Moore when he discovered the couple outside the cabin. *See* N.T. Trial, 2/12-14/18, at 41 (Appellant told Mr. Moore that Appellant's mother knew the couple was at the cabin and was going to come and let them in if Appellant could not get in). Appellant's arguments to the contrary are based upon her belief that the jury should have taken her explanations at face value and ignored the rest of the circumstances, which is contrary to our standard of review. *Williams*, *supra*.

Viewed in the light most favorable to the Commonwealth, the evidence and inferences therefrom was sufficient to allow the jury to conclude beyond a reasonable doubt that Appellant intended to aid her husband in committing the theft and participated in the theft by aiding in gaining access to the property. Therefore, Appellant's claim warrants no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018