J-S12033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES MICHAEL KONCSLER, | : | |
| | : | |
| Appellant | : | No. 1548 MDA 2018 |

Appeal from the Judgment of Sentence Entered August 24, 2018
in the Court of Common Pleas of Schuylkill County
Criminal Division at No(s):  CP-54-CR-0002000-2017

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 24, 2019**

Charles Michael Koncsler ("Koncsler") appeals from the judgment of sentence imposed following his conviction of delivery of a controlled substance.[1]  We affirm.

On September 14, 2017, Shenandoah Police Chief George Carado ("Chief Carado") contacted a confidential informant ("CI") to conduct a controlled purchase of narcotics from Koncsler.  Chief Carado supplied the CI with $20.00 pre-recorded buy money, and watched while the CI approached Koncsler near the corner of Lloyd and Main Streets in Shenandoah, Pennsylvania.  The CI and Koncsler completed a hand-to-hand exchange, and the CI returned to Chief Carado with two pills, and $4.00 in change.  Chief Carado arrested Koncsler later that day, and found the $20.00 in pre-recorded

_____

[1] 35 P.S. § 780-113(a)(30).

buy money during a search incident to arrest. Subsequent testing confirmed that the two pills the CI obtained from Koncsler were Percocet, which contain 10 milligrams of oxycodone.

Following a jury trial, Koncsler was convicted of delivery of a controlled substance. On August 24, 2018, the trial court sentenced Koncsler to a term of 12 months, less one day, to 24 months, less one day, to be served on house arrest with electronic monitoring. Koncsler filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.[2]

Koncsler now raises the following question for our review: "Did the Commonwealth present sufficient evidence to convict [Koncsler] of delivery of a controlled substance beyond a reasonable doubt?" Brief for Appellant at 4.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient

---

[2] Koncsler's first appellate counsel ("Counsel") filed a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967), on January 8, 2019, but failed to file a separate petition to withdraw as counsel. Accordingly, by a Judgment Order entered on April 2, 2019, this Court directed Counsel to file an advocate's brief or fulfill the requirements set forth in **Anders** within 30 days. Counsel filed a separate Petition to Withdraw with this Court, but Counsel's **Anders** Brief failed to satisfy the requirements of **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009) (addressing the requisite contents of an **Anders** brief). This Court entered an Order on May 17, 2019, directing Counsel to either comply with the requirements of **Santiago**, or to file a proper advocate's brief with this Court within 30 days. Counsel failed to comply, and neglected to respond to our Prothonotary's attempts to contact him concerning the status of his brief. This Court thereafter remanded the matter to the trial court for the appointment of new counsel. On July 3, 2019, the trial court appointed Koncsler new counsel.

evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

Koncsler argues that there was insufficient evidence to sustain his conviction of delivery of a controlled substance. Brief for Appellant at 8-9. Koncsler claims that the CI, the most critical witness, did not testify at trial. *Id.* at 8. Koncsler also contends that because Chief Carado was positioned a block away from the exchange, he was unable to conclusively identify Konscler. *Id.* Additionally, Koncsler asserts that because the arrest was not made immediately following the delivery, "many things could have happened [during this time,] including the marked money being passed from the person

- 3 -

making the alleged delivery to [Koncsler] for a legitimate purpose." **Id.** at 9.[3]

The Controlled Substance, Drug, Device and Cosmetic Act (the "Act") prohibits, *inter alia*, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance not registered under this [A]ct…." 75 P.S. § 780-113(a)(30). The Act defines "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance…." **Id.** § 780-102. "A defendant actually transfers drugs whenever he physically conveys drugs to another person." **Commonwealth v. Murphy**, 844 A.2d 1228, 1234 (Pa. 2004).

Here, Chief Carado testified that on September 14, 2017, he contacted a CI to conduct a controlled purchase of narcotics from Koncsler. **See** N.T., 6/6/18, at 25. Chief Carado testified that he had been conducting surveillance in the area of Lloyd and Main Streets, when he saw Koncsler and contacted the CI. **See id.** at 26-27. Chief Carado stated that he met with the CI to conduct a search of the CI's person, and to supply the CI with $20.00 in pre-recorded buy money. **See id.** Chief Carado parked his unmarked car in a bank parking lot, about one block away from Koncsler. **See id.** at 26. According to Chief Carado, the CI then walked toward Koncsler, spoke with

---

[3] We observe that Koncsler fails to support his claim with citation to, and discussion of, relevant case law. **See** Pa.R.A.P. 2119(a) (providing that stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). However, we decline to deem Koncsler's sole issue waived.

him for less than 30 seconds, and completed a hand-to-hand transaction before returning to Chief Carado's vehicle. *See id.* at 27-29; *see also id.* at 27-28 (wherein Chief Carado testified that he was able to observe the transaction and identify Koncsler from his vantage point). Chief Carado testified that the CI gave him two pills, and $4.00 in change. *See id.* at 29. After Chief Carado searched the CI again, he and the CI returned to the police station. *See id.*

After placing the two pills into evidence, Chief Carado returned to the area of Lloyd and Main Streets. *See id.* at 29-30, 32; *see also id.* at 29 (wherein the two pills recovered from the CI after the controlled buy were admitted into evidence as Commonwealth's Exhibit 2). Chief Carado testified that he saw Koncsler there, and took him into custody for the sale to the CI. *See id.* at 32. According to Chief Carado, his search of Koncsler revealed a metal canister containing one Xanax pill, a prescription bottle of Percocet (prescribed to Koncsler), and $185.00 in U.S. currency, including the pre-recorded $20.00 bill that the CI had used during the controlled buy. *See id.* at 32-34. Chief Carado testified that he later transported the evidence to the Pennsylvania State Police Crime Lab in Bethlehem, Pennsylvania, for testing. *See id.* at 36-37.

Brendan McCann ("McCann"), a forensic scientist for the Pennsylvania State Police, testified that the two pills admitted into evidence as Commonwealth's Exhibit 2 (the pills recovered from the CI) contained a

mixture of acetaminophen and oxycodone. ***See id.*** at 49, 52; ***see also id.*** at 46-48 (wherein the Commonwealth presented McCann's qualifications, and the parties stipulated that McCann could testify as an expert in forensic science, and specifically, drug identification). Additionally, McCann testified that oxycodone is a controlled substance. ***See id.*** at 52; ***see also id.*** at 30-31 (wherein Chief Carado testified that oxycodone is a controlled substance).

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence for the jury to conclude that Koncsler knowingly delivered a controlled substance to the CI. The trial testimony demonstrates that, while under the supervision of Chief Carado, the CI approached Konscler, and purchased two pills, using $20.00 in pre-recorded buy money. Chief Carado was able to observe the transaction from his position a block away. The record also reflects that the pills were later identified as Percocet, which contains 10 milligrams of oxycodone, a controlled substance. Chief Carado's testimony concerning the transaction, which was credited by the jury, is sufficient to support the verdict. ***See Commonwealth v. Ellison***, 2019 PA Super 193, at \*5-\*7 (filed June 20, 2019) (concluding that there was sufficient evidence to sustain defendant's conviction of delivery of a controlled substance, where, under the supervision of an agent from the Pennsylvania Attorney General's Office, a CI made contact with defendant on three separate occasions to purchase cocaine, even

though the agents did not witness the entirety of the transactions). Thus, Koncsler is not entitled to relief on his sole claim on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/24/2019