J-S07009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHELDEN LENNY SNELLINGS | : | |
| | : | |
| Appellant | : | No. 908 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 15, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001273-2020

BEFORE:   LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:                **FILED: APRIL 2, 2024**

Shelden Lenny Snellings appeals,[1] *nunc pro tunc*,[2] from the judgment

of sentence, entered in the Court of Common Pleas of York County, following

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In his notice of appeal, Snellings purports to appeal from both the guilty verdict and his judgment of sentence.  However, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence[.]"  ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2011) (en banc) (citation omitted).

[2] Snellings did not file a timely notice of appeal from his judgment of sentence. On October 14, 2022, Snellings filed a *pro se* "Motion for New Counsel" and a "Motion for Withdrawal of Counsel *inter alia* Ineffective Assistance of Counsel," in which Snellings alleged that his trial counsel did not file a timely, requested, notice of appeal.  The trial court treated these filings as petitions filed pursuant to the Post Conviction Relief Act (PCRA), ***see*** 42 Pa.C.S.A. §§ 9541-9546, and appointed PCRA counsel.  On February 27, 2023, PCRA counsel filed an amended PCRA petition.  On May 16, 2023, the PCRA court conducted an evidentiary hearing.  On May 25, 2023, the PCRA court granted Snellings' PCRA petition and reinstated his direct appeal rights *nunc pro tunc*.  ***See***
*(Footnote Continued Next Page)*

his conviction of one count of delivery of a controlled substance – cocaine.[3] After review, we affirm.

On July 22, 2017, Pennsylvania State Police (PSP) Trooper Shawn Wolfe organized and conducted a controlled drug buy of cocaine. Trooper Wolfe contacted a confidential informant (CI) and coordinated the buy with Detective Christopher Keppel of the York County Drug Task Force and Police Officer Erika Eiker of the York County Police Department. Prior to the drug buy, it was determined that Officer Eiker, acting in an undercover capacity, would transport the CI to the drug buy, while Detective Keppel and Trooper Wolfe observed the drug buy from surveillance locations.

On July 22, 2017, Trooper Wolfe arrived at the Mount Rose Plaza in York County to observe the transaction. Detective Keppel and Officer Eiker conducted a search of the CI prior to the drug purchase, and then took separate vehicles to the location. Officer Eiker and the CI traveled together in an undercover vehicle. Shortly after arriving, a dark colored Ford Explorer SUV, driven by Snellings, arrived. The CI exited Officer Eiker's vehicle, entered Snellings' vehicle, and remained in the vehicle for approximately one minute. Subsequently, the CI exited Snellings' vehicle and re-entered Officer Eiker's vehicle. Snellings drove away, and Trooper Wolfe followed. As Trooper Wolfe followed, he observed that Snellings was the only occupant of the

_____

Order, 5/25/23. Snellings subsequently filed the instant *nunc pro tunc* notice of appeal.

[3] 35 P.S. § 780-113(a)(30).

vehicle, and no one entered or exited the vehicle. Ultimately, Trooper Wolfe stopped following Snellings[4] and met with Detective Keppel, Officer Eiker, and the CI.

While Trooper Wolfe followed Snellings, the CI provided the purchased cocaine to Detective Keppel and Officer Eiker. Detective Keppel and Officer Eiker then searched the CI for contraband, weapons, and money. The cocaine was sent to the PSP Bureau of Forensic Services.

On January 1, 2018, Trooper Wolfe filed criminal charges against Snellings and obtained an arrest warrant. However, police were unable to locate Snellings until March 20, 2020, whereupon Snellings was arrested for the above-mentioned offense.

On June 17, 2020, Snellings filed an omnibus pre-trial motion.[5] On August 5, 2020, the trial court[6] conducted a hearing. On August 20, 2020, the trial court denied Snellings' motion. On September 20, 2021, Snellings

---

[4] As described **infra**, Trooper Wolfe conducted a "buy/walk" transaction, with the intention of not arresting Snellings that day because police wished to conduct additional transactions to cast a wider net.

[5] In Snellings' pre-trial motion, relevant to his claims on appeal, he argued that the Commonwealth violated his due process rights by delaying in filing charges against him. **See** Pre-Trial Motion, 9/20/21, at 3-5; Amended Pre-Trial Motion, 10/3/21; **see also** N.T. Jury Trial (Day 1), 10/4/22, at 18-29 (trial court addressing Snellings' claim prior to trial).

[6] The pre-trial proceedings, jury trial, and sentencing were conducted by the now retired Honorable Craig T. Trebilcock. Subsequent to Judge Trebilcock's retirement, the case was reassigned to the Honorable Kathleen J. Prendergast, who handled the above-described PCRA proceedings and has authored the Pa.R.A.P. 1925(a) opinion.

filed a motion *in limine*, and, on October 3, 2021, Snellings filed an amended motion *in limine*. The trial court heard argument on those motions, and denied both on October 4, 2021.

Snellings proceeded to a three-day jury trial held from October 4-6, 2021. At the conclusion of trial, the jury convicted Snellings of the above-mentioned drug offense. The trial court ordered the preparation of a pre-sentence investigation report and deferred sentencing. On December 15, 2021, the trial court sentenced Snellings to a period of 27-54 months' imprisonment. Snellings did not file a post-sentence motion.

Snellings filed a *nunc pro tunc* notice of appeal and a timely court-ordered Rule 1925(b) concise statement of errors complained of on appeal, and the trial court filed a Rule 1925(a) opinion. Snellings now raises the following claims for our review:

> [1.] Whether the trial court committed an abuse of discretion in denying [Snellings'] motion to dismiss where the Commonwealth failed to use due diligence in bringing forward the charge and in finding the defendant.
>
> [2.] Whether the trial court erred in accepting the jury verdict where the Commonwealth failed to present sufficient evidence to prove th[at] it was [Snellings] who delivered the narcotic.

Brief for Appellant, at 4.

We conclude that Snellings' first argument is waived. In his brief, Snellings raises and conflates two distinct sub-issues. First, he argues that the Commonwealth violated his due process rights when it unnecessarily delayed in filing charges against him. *Id.* at 10-11. Second, Snellings asserts

that the Commonwealth violated his speedy trial right by failing to bring him to trial within a year of filing charges. *Id.* at 12-15.

Snellings' first sub-issue is waived for failure to include it in his Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b)(4)(ii) ("The Statement **shall** concisely identify each error that the appellant intends to assert with **sufficient detail to identify the issues to be raised for the judge**.") (emphasis added). In his Rule 1925(b) concise statement, Snellings only preserves a Pa.R.Crim.P. 600 claim and his sufficiency claim. *See* Concise Statement, 7/17/23, at 1-2. Consequently, this claim has been waived.

Regarding his second sub-issue that the Commonwealth violated his speedy trial rights, Snellings did not file a Rule 600 challenge before the trial court. *See* Pa.R.A.P. 302(a) ("[I]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal."); *see also* ***Commonwealth v. Williams***, 900 A.2d 906, 909 (Pa. Super. 2006) ("including an issue in a [c]oncise [s]tatement does not revive issues that were waived in earlier proceedings"). The first mention of this claim appears in Snellings' Rule 1925(b) concise statement. *See **Williams**, **supra**.* Consequently, this claim is also waived. *See **Commonwealth v. Brock***, 61 A.3d 1015, 1019-20 (Pa. 2013) (Rule 600 motion must be made in writing, and copy of such motion must be served on Commonwealth's attorney).

In Snellings' second claim, he contends that the Commonwealth presented insufficient evidence of his identity to sustain his conviction for delivery of a controlled substance – cocaine. *See* Brief for Appellant, at 15-

16. Snellings argues that the SUV had heavily tinted windows and was not registered to Snellings. *See id.* Snellings posits that only the CI could identify the person who sold the drugs, and the Commonwealth failed to present that individual's testimony to support its case. *See id.*

When examining a challenge to the sufficiency of the evidence, we adhere to the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

Delivery of a controlled substance is provided for in section 780-113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act (the "Act"), which prohibits the following:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). The term delivery, as used in this section, is defined by the Act as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device[,] or cosmetic[,] whether or not there is an agency relationship." *Id.* at § 780-102. "Thus, for a defendant to be liable as a principal for the delivery of a controlled substance[,] there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004) (citation omitted). "A defendant actually transfers drugs whenever he physically conveys drugs to another person." *Id.* However, section 780-113(a)(30) does not require the Commonwealth "to establish that an exchange of money took place," nor does it "require that the defendant transfer the drug[(s)] to a law enforcement officer; all that is necessary is that the transfer be between two people." *Commonwealth v. Metzger*, 372 A.2d 20, 22 (Pa. Super. 1977).

Instantly, the trial court addressed this claim as follows:

This case stems from a controlled buy of cocaine utilizing a [CI] which occurred on June 22, 2017, in York County. The affiant in this case, Trooper [] Wolfe[], had an opportunity to meet with the [CI], and he arranged for the [CI] to purchase a sum of cocaine from [Snellings]. Based on background research, [Trooper Wolfe] instructed surveillance units to take a position in an area where

- 7 -

the drug transaction was supposed to occur. The CI was provided with $130.00 in official funds and was to set up a buy for 3.5 grams of cocaine. Once contact was made between the CI and the target, a meeting location was arranged at Mount Rose Plaza in the east end of York City. At the time the transaction was set to occur, Detective Christopher Keppel of the York Drug Task Force met with Officer Erika Eiker and the CI. Detective Keppel searched the CI for any contraband, drugs, weapons, or funds outside of the official funds provided by [the] officers; finding none, Officer Eiker drove the CI in an undercover vehicle to the meeting location at Mount Rose Plaza.

Trooper Wolfe arrived at the meeting location prior to the [CI] to observe the transaction. Detective Keppel set up surveillance across the parking lot from Officer Eiker, to ensure the safety of both the officer and the CI. After the CI was in location, [Snellings] arrived in a dark colored Ford Explorer SUV and pulled into the Mount Rose Plaza parking lot, stopping perpendicular to Officer Eiker's undercover vehicle. At this point, the CI exited Officer Eiker's vehicle and approached the front passenger door of the target vehicle. Officer Eiker testified that she did not see anyone else inside of the target vehicle aside from [Snellings] and that there were no cars blocking her line of sight to the target vehicle. The CI was with the target vehicle for roughly a minute and then returned to Officer Eiker's vehicle. The target vehicle then left the Mount Rose Plaza, with Trooper Wolfe following behind. Officer Eiker then drove the CI to the base of operations wherein the CI was searched again by Detective Keppel, to ensure that there was no contraband, money, or weapons, outside of the cocaine that was purchased during the transaction. The CI turned over cocaine to Officer Eiker who . . . turned it over to Trooper Wolfe.

Testimony by Trooper Wolfe indicated that the transaction was to be a "buy/walk" transaction; meaning that the CI was to be buying a sum of cocaine and returning that cocaine to the officers. Then, the target who delivered the cocaine would not be arrested at that time so the investigation could continue. All witnesses, Officer Eiker, Detective Keppel, and Trooper Wolfe[,] testified that they had interacted with the individual driving the target vehicle multiple times in the past and that they were 100% certain that the driver of the vehicle was [Snellings]. Further, Trooper Wolfe, in following the target vehicle from the meeting location into the city, testified that he did not see another person in the vehicle

with [Snellings], nor did he see anyone enter or exit the vehicle in that time. Finally, a stipulation was entered into on the record, which stated the following:

> If called to testify, forensic scientist Kristy Bruno of the [PSP] Bureau of Forensic Services would state that Commonwealth Exhibit Number 3, the bag of white powder, had a total weight of 2.1 grams, plus or minus 0.01 grams and contained cocaine, which is a Schedule II controlled substance. The weights are stated at a minimum coverage probability of 99 percent and those are documented in Commonwealth's Exhibit Number 4.

Trial Transcript, [10/4-6/21,] at 185.

* * *

> [E]vidence was presented that a controlled buy of cocaine was set up between a [CI] and [Snellings]; that the [CI] was driven to the meeting location by an undercover officer; that multiple officers witnessed the transaction and were able to identify the target as [Snellings]; that the [CI] was searched for contraband prior to the transaction and following the transaction; that no contraband outside of the cocaine to be purchased was located on the [CI]; and that [Snellings] was the only individual in the target vehicle prior to and following the transaction with the [CI]. This evidence, viewed in a light most favorable to the Commonwealth clearly establishes each material element of the crime charged.

Trial Court Opinion, 8/23/23, at 2-4, 8 (some citations omitted).

After review of the record, we agree with the trial court's factual findings and analysis. Consequently, we conclude that the Commonwealth presented sufficient evidence that Snellings sold the cocaine to the CI. *See Murphy*, *supra*; *Smith*, *supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/02/2024